Argued April 17; affirmed July 23; rehearing denied October 8; objections to cost bill overruled November 5, 1929

LUCILLE REID *v.* YELLOW CAB COMPANY.
(279 Pac. 635)

For appellant there was a brief over the name of *Mr. Thomas Mannix* with an oral argument by *Mr. Barnett H. Goldstein.*

For respondent there was a brief over the name of *Mr. Lou Wagner* with an oral argument by *Mr. Frank J. Lonergan.*

COSHOW, C. J. ▮ It was error for the court to admit the testimony regarding past events of the witness Dr. Alan W. Smith, consulted by plaintiff for the express purpose of qualifying himself to testify. Dr. Smith never treated plaintiff. There were two trials in the case and just before the first trial he was consulted by plaintiff at the request of her attorneys for the express purpose of qualifying him to testify. At the second trial he was again consulted for the same purpose. I think that his testimony wherein he was

permitted to relate what the witness told him about how the accident occurred, about her past suffering and nervousness, was clearly incompetent. The majority of jurisdictions exclude what the plaintiff tells a physician under such circumstances as to the plaintiff's present condition where the doctor is not called by the plaintiff to be treated. The better rule is stated in 22 C. J., pp. 268 and 269:

"Narrative statements to a physician are to be rejected where they relate to facts not connected with diagnosis and. treatment, such as the cause of an illness or injury, the circumstances under which an injury was received, or the instrument with which it was inflicted, or past sufferings of the patient. But where a statement to a physician, although narrative in character, relates to a matter which it is necessary or proper for him to know in order that he may accurately diagnose and properly treat the case, it may be shown."

"So, in *Consolidated Traction Co. v. Lambertson,* 60 N. J. L. 452 (38 Atl. 683), it was said that where declarations were made to a physician, not for the purpose of treatment, but to lead the physician or surgeon to form an opinion to which he might testify as a witness for the declarant, not only was the reason for credibility absent which would have been present had the patient applied for treatment, but instead, self-interest became 'a motive for distortion, exaggeration and falsehood. Hence, it is the better conclusion that declarations made under such circumstances are not competent evidence on behalf of the declarant' ": Note to *Shaughnessy v. Holt,* (236 Ill. 485, 86 N. B. 256), 21 L. R. A. (N. S.) 826.

"It is plain that the statement by a party to a cause of his bodily and nervous symptoms made long after the occurrence of the accident to which he attributes them and for purposes connected with the preparation for trial of a suit in which his condition of health is material, and not made to a physician for the purpose

of obtaining advice or treatment are not admissible in evidence in his own favor as proof of the truth of the matters stated'': *Cronin v. Fitchburg*, 181 Mass. 202, 203 (63 N. E. 335, 92 Am. St. Rep. 408).

"If the statements were made to a physician not in attendance on the patient, but for the purpose of preparing him to testify, an opinion based thereon is not admissible, though an opinion based on an examination of the plaintiff during the trial, at the defendant's request, has been accepted, with a suggestion that the general rule of exclusion would have applied if the examination had been by the plaintiff's own witness alone, in preparation for trial'': 11 R. C. L. 613, § 35.

"Statements of *past sufferings, pain, or symptoms* are not excluded by the necessity principle, for the necessity is equally the same for all internal conditions, whether past or present. They are, however, excluded by the principle of Guarantee of Trustworthiness (ante, § 1718), for they are not naturally caused by the existing pain or other symptoms, but, being deliberate accounts of past occurrences, are no better than statements of any other past events. They are, therefore, generally excluded. * * *

"There is in Massachusetts (and a few other jurisdictions) a modification of the preceding rule where the statements are made to a physician. Statements of past facts in the shape of the circumstances of the injury are, as elsewhere, ALWAYS REJECTED; but statements of *past suffering* and other symptoms in preceding stages of the illness are admitted *when made to a physician.* * * *. This modification (of the hearsay rule) extends only to past sufferings and symptoms, and does not include the past external events attending the injury or illness'': 3 Wigmore on Evidence, 2216, 2217, § 1722.

■ The authority to support the text cited by the erudite author is *Roosa v. Loan Co.*, 132 Mass. 439. The physician testifying in that case was treating the party. A different rule governs that kind of a case

from the rule controlling the instant case. The difference in the rulings of the various jurisdictions is whether a physician called by the plaintiff for the express purpose of qualifying himself to testify might repeat what plaintiff said to him regarding his suffering and nature of his injury. We think the better rule, as announced by the majority of cases, excludes statements made by the plaintiff regarding his past suffering. There is no authority that I have been able to find which admits statements made by plaintiff to a physician regarding the cause of the injury or the manner in which it was received or other details regarding the event in which plaintiff claims to have received the injury. The statement to Dr. Smith that she had been nervous was harmless because the doctor found from his examination, and so testified, that plaintiff was nervous. He explained in detail the tests he made in order to testify to that effect.

The objection made by defendant to the repetition by Dr. Smith of plaintiff's narration to him of the manner in which she received the injury, the cause of her injury and the nature of her suffering should have been sustained. But the evidence is probably harmless because the plaintiff herself testified directly to these injuries and to the other facts repeated by her to her witness Dr. Smith. There seems to have been no dispute as to the manner the injuries were received. The testimony of Dr. Smith might have been very damaging under some conditions and should have been excluded. A physician might be permitted under some circumstances, even where he is called by the plaintiff for the express purpose of testifying, to relate what plaintiff said about her suffering at that particular time but not her past suffering, and such should be admitted with great caution. A large discre-

tion should be left to the trial judge, who should exercise great care to prevent as far as possible plaintiff's support of his case by what he has told a physician. Such statements are not made under oath, are self-serving and should be received with great caution.

■ The instruction on necessity of proving permanency of injury in order to justify including damages for future suffering in the verdict was correctly stated by the learned trial judge. He charged the jury in part:

"You are not to indulge in the realm of possibilities as to her injuries, but the probability of future suffering, proved by a preponderance of the evidence in the case, may be taken into consideration. Not the possible injuries, but what the evidence shows the probable injuries to be, if the injuries are to be permanent. The evidence must show that they are permanent."

The instruction sufficiently covered the instruction requested by defendant: *Barron v. Duke,* 120 Or. 181, 194 (250 Pac. 628).

The testimony of Dr. Smith in the instant case is not harmful. The judgment is affirmed.

McBride, J., concurs.

AFFIRMED. REHEARING DENIED.
OBJECTIONS TO COST BILL OVERRULED.

ROSSMAN, J., specially concurring.

I believe that the judgment of the circuit court should be affirmed, but since I find that the record is free from error I can not subscribe to the opinion of the chief justice concerning the testimony of the medical expert. Such being the situation, I am availing myself of the privilege of expressing my views upon that subject.

■ The prevailing opinion fails to recognize the distinction between receiving in evidence the commu-

nications of a patient to his physician as proof of the truth of the matter stated, and admitting them for the purpose of showing the basis of the physician's judgment. When received for the purpose first mentioned the communications, as repeated by the physician-witness, became evidence in support of the contentions of the party; while in the second instance they go before the jury merely to show upon what information the medical man based his opinion. The following three quotations will suffice to make clear the distinction. In *Thomas v. Herrall,* 18 Or. 546 (23 Pac. 497, 498), Mr. Justice STRAHAN quoted from I Greenleaf on Evidence, § 102, as follows:

"So, also the representations of a sick person of the nature, symptoms and effects of the malady under which he is laboring at the time, are received as original evidence. If made to a medical attendant they are of greater weight as evidence; but if made to any other person they are not on that account rejected."

■ Thus, under some circumstances the communications to the physician are regarded as the language of pain, or as a part of a *res gestae* and not as hearsay evidence; they are, therefore, admissible to establish the truth of the matters communicated. We come now to an illustration of their secondary use, that is, when offered to show the basis of the physician's judgment.

"The party offering an expert is at liberty to reinforce his judgment, even before any attempt is made to discredit or impeach it, by showing the grounds on which it is based, provided such facts are relevant and admissible for the purpose. But facts so stated do not become evidence in the case": 22 C. J., p. 639, § 734.

The third quotation is taken from Chamberlayne on Evidence, § 2020:

"Early in his attendance, the medical witness is apt to call for the 'history of the case.' He asks, in other

words, for a detail of the circumstances which are said to have led up to the situation before him. For judicial purposes, the assertive capacity of these declarations must carefully be distinguished from their use for diagnosis or treatment. As proof of the facts, the statements are deemed incompetent.''

Even a hasty perusal of the quotations set forth in the decision of the Chief Justice will readily reveal that those authorities, with the exception of Ruling Case Law, were speaking of the use of the communications to the physician, not for the limited purpose of showing the foundation of his opinion, but as original evidence to prove the disability. In *Cronin v. Fitchburg* the evidence was held admissible for the limited purpose. Since neither party to this case contends that the evidence was receivable as original evidence, we can readily dismiss those authorities as unnecessary. The plaintiff, however, earnestly contends that the evidence was admissible to show the basis for the expert's opinion. When the communications are repeated by the physician-witness for that purpose, their use is not unlike a hypothetical question which supplies the premise and calls only for the expert's answer. In fact, the only difference is that in the former instance the witness supplies both premise and answer, whereas in the latter he supplies only the one. Having thus disposed of the authorities relied upon by the Chief Justice, I shall now set forth my views upon the contentions of the parties.

The complaint charges that a taxicab owned by the defendant in which the plaintiff was riding as a passenger negligently collided with a streetcar; it is alleged that the plaintiff was injured and prays for $10,000 damages. The answer denied these averments. There was evidence that the sudden stop of the cab pitched

the plaintiff forward so that her head forcefully struck the glass partition that separated the two portions of the cab, breaking the same and then threw her to the floor.

Dr. Smith, who gave the testimony with which we are now concerned, did not see the plaintiff until several months after the accident and it seems he was not consulted for treatment, but to enable him to make an examination of the plaintiff's scars and of her health so that he might testify at the trial. The court below, over the defendant's objections, permitted this physician to read from his office records the "history of the case" as follows:

"She is thirty-one years of age; her present weight 139 pounds, and she gave her past weight as 150 pounds. She said she was in a taxicab that was in collision with a streetcar, on June 3, 1925, between eleven and twelve o'clock a. m., and as a result of this collision that she received the following injuries; a cut on the top of her head, a general contusion of her body, cut at her right knee, both knees were bruised, but the right one was cut; and she suffered from shock and nervousness; that she was taken in an ambulance, and taken to the St. Vincent's hospital, and there treated. She now complains of pain over the right side of her head, about the site of the injury, where she was hit on her head; and extreme nervousness."

The objections made by the defendant to the foregoing in the court below were thus expressed:

"* * * but we do object to any testimony from this witness as to any conversations had with the plaintiff, being self serving, and statements made by the plaintiff to the doctor, not in the presence nor subject to examination by the defendant, and that it would be purely hearsay, and we would like to have our objection go all of the testimony. We are not objecting to him referring to his notes, as far as that is concerned,

but we do object to having him detail the conversations had with the plaintiff.''

When this evidence was offered and objected to, the fact was not developed that the plaintiff had consulted the physician only for the purpose of securing his services as a witness. It is not entirely clear that she did not go to him for treatment, but we shall assume that she sought no medical aid at that time.

The defendant contends that a physician consulted post litem motam, not for treatment but to enable him to testify to the injury, should not be permitted to repeat as a witness the history of the case given by the patient, nor testify to subjective symptoms, nor base an opinion thereon. Appellant's brief cites many adjudications in support of its contention. A collection of the cases may be found in Wigmore on Ev. (2 ed.), § 1721; that writer thus summarizes their effect:

''By some courts the circumstance that the declarations were 'post litem' is taken as not excluding them, but merely as affecting their weight. By still other courts, representing the more common practice, the declarations are absolutely excluded if made to a physician at a consultation for the purpose of enabling him to testify to the injury, and otherwise may be admitted though made 'post litem.' In some jurisdictions it is difficult to say that any one of these three forms has definitely been adopted.''

See also Chamberlayne on Evidence, § 2020; 11 R. C. L., pp. 609 and 645; 22 C. J., Evidence, p. 269, and a comprehensive note in 21 L. R. A. N. S. at 826. An examination of the foregoing citations will readily reveal that the great weight of authority sustains the attitude suggested by the defendant. I prefer, however, to determine the matter upon a consideration of principle rather than by a mere count of the cases.

The courts which lay down the broad rule referred to in the second classification by Dean Wigmore, do not deny that ordinarily communications made by a patient to a physician to enable him to prescribe are admissible to explain the subsequent professional action or to afford a foundation for the opinion which he expresses as an expert witness; but, maintain that a litigant, who approaches a physician seeking testimony only, is not surrounded by the restraining influences which lead to a truthful delineation of sufferings, and that his quest for evidence may impel him to exaggerate existing pains and even simulate additional ones. These authorities brand his communications as self-serving and exclude them as pure hearsay; many of these same courts hold inadmissible any exclamations, jerks and twitches that may have been voluntary, and finally some courts argue that if a medical expert may employ such communications, twitches and exclamations as the premise for an opinion, and communicate the latter to the jury as a witness, the rule would be circumvented and the effect of the inadmissible evidence would come before the jury in the form of the physician's opinion; therefore they exclude the opinion also. A typical case, which expresses well the reasons which have prompted the courts embracing the rule in its entirety, is *Greinke v. Chicago City Ry. Co.,* 234 Ill. 564 (85 N. E. 327) ; a case which reviews many of the authorities is *Texas & N. O. R. Co. v. Stephens,* (Tex. Cir. App.) 198 S. W. 396. The result of the rigid application of the rule which has led many appellate courts to review with painstaking labor the evidence in an endeavor to determine whether the flinching of a muscle, the wink of an eye, a sudden exclamation, a turning of the toes inward, or a twitch of a hand was voluntary or involuntary, seems undesirable and poor

commendation for the rule. Yet, when the conclusion is reached, that the communication, whether mute or oral, is self serving, it is necessary to exclude these manifestations of apparent pain for it would be as possible to mislead an examining physician by a twitch of a muscle as by a description of a feigned ailment.

It is readily perceivable that one, who submits to an examination so as to prepare the physician for the witness stand, does not venture the state of his health upon his communications as does a patient, who feels that he will not be successful in obtaining a proper course of treatment, unless he accurately described to his physician the afflictions which beset him. Nevertheless, each expects the physician to act upon what is said, and in neither instance is the physician justified in closing his eyes to the obvious. Further, in each instance it may be impossible to make known to the physician a disorder without the use of words. We quote the following from Chief Justice Bigelow in *Barber v. Merriam,* 11 Allen (Mass.) 322, 325:

"Its admissibility is an exception to the general rule of evidence, which has its origin in the necessity of the case * * *. To the argument against their competency founded on the danger of deception and fraud, the answer is that such representations are competent only when made to a person of science and medical knowledge, who has the means and opportunity of observing and ascertaining whether the statements and declarations correspond with the condition and appearance of the persons making them, and the present existing symptoms which the eye of experience and skill may discover."

 This is the first time that this problem has been before us. In *Yarbraugh v. Carlson,* 102 Or. 422 202 P. 739), and *Weygandt v. Bartle,* 88 Or. 310 (171 P. 587), this court held that a physician may testify to the injured party's statements as to his symptoms,

ills, and the locality and character of his pain when made for the purpose of receiving medical treatment, and in *Lassas v. McCarty,* 47 Or. 474 (84 P. 76), we held that a witness may express his opinion as to the mental condition of another based upon his familiarity with the latter, but that the reasons for the belief must be stated so that the jury might know what credit to attach to the opinion. Apparently that was the rule which the trial court endeavored to apply in the present instance; it received the opinion of the physician, concerning the nervousness of the plaintiff, and permitted him to accompany it with the foundation upon which the opinion was premised, consisting of the history of the case, two reflex tests and a Rhomberg test. The ruling I believe conforms to the general practice commonly employed in this state.

In fact, the contemplation of any trial, in which an issue of insanity might occur, suggests forcefully the danger lurking ahead if a strict exclusionary rule is adopted. We quote the following from *State v. Hays,* 22 La. Ann. 39, 40:

"Insanity is a disease. It has its pathology and its symptoms, and it would seem that its existence can be determined only by a careful scrutiny of those symptoms. The tree is to be known by its fruits. The condition of the hidden mechanism is to be ascertained by those communicated movements which are external and apparent. To this end the usual expressions of a mental state are original and competent evidence. If they are the natural language of mental alienation, they furnish satisfactory and sometimes the only proof of its existence. It is true that such expressions may be feigned, and often are; but whether they were real or feigned is for the jury to determine. Hence the rule prevails that, as indicia of the mental condition, not only the acts, but the conversations, exclamations, and declarations of the person may be shown."

■ The plaintiff does not contend that any communication made by the plaintiff to Dr. Smith was admissible to establish any fact thus mentioned. Indeed the only purpose the narrative, as repeated by the physician, serves is to outline in part the foundation for his opinion; if the communication was false the opinion to that extent fails and should be disregarded.

The defendant challenges only the physician's repetition of the history of the case, and hence we limit our ruling to that one matter. Since that narrative was received only to indicate in part the foundation of the opinion later expressed we believe it was admissible. *Cronin v. Fitchburg & L. St. Ry. Co.*, 181 Mass. 202 (63 N. E. 335, 92 A. S. R. 408), cited in the opinion of the Chief Justice has facts strikingly similar to those before us, and constitutes a well reasoned authority in support of the statement just made; the following is quoted from it:

"It is plain that the statement by a party to a cause of his bodily and nervous symptoms, made long after the occurrence of the accident to which he attributes them, and for purposes connected with the preparation for trial of a suit in which his condition of health is material, and not made to a physician for the purpose of obtaining advice or treatment, are not admissible in evidence in his own favor as proof of the truth of the matters stated. It is equally plain that every person admitted as an expert to testify to his opinion may state in his testimony the grounds and reasons for that opinion, and that the party calling the expert may put in evidence those grounds and reasons in the direct examination of the expert, and before calling upon him to give his opinion to the jury. The statement of these rules as to the examination of witnesses called as experts, made by Chief Justice Bigelow in *Barber v. Merriam,* 11 Allen, 322, 324, has since the decision of that case been considered as law in this

commonwealth, and has governed trials. So well established is this doctrine that the expert, upon direct examination, and before giving his opinion in evidence, may testify to the matters which form the grounds and reasons of that opinion, that in *Koplan v. Gaslight Co.*, 177 Mass. 15, 21 (58 N. E. 183), this court overruled, without discussion, an exception to testimony so given, and which save as showing the grounds of the opinion about to be given by the witness, would have been inadmissible.''

See also Wigmore on Ev. (2 ed.), §§ 1720, 1722. To me it seems that the authorities, which exclude the medical expert's opinion, lay undue emphasis upon the communications of the declarant; it is not the latter, but the physician's opinion, which becomes the evidence. The opinion is not founded exclusively upon the narrative, but upon the combined effects of that with his observations of the consultant, his schooling, experience, and knowledge of similar cases. Experts are ofttimes permitted to employ, as part of the material upon which they found an opinion, information which is ordinarily denominated as hearsay: for instance, an expert who testifies to the value of real estate may employ knowledge of sales with which he had no personal contact; and a broker in securities, grain or other commodities, in expressing an opinion may resort to price lists, daily postings upon quotation boards, and even information picked up by him in conversation with other dealers. I believe that the objection to the opinion of the expert, based in part upon the history of the case, is applicable to its weight and not to admissibility. One, who in good faith seeks the services of a medical expert as a witness, would find it as impossible to communicate the facts of an internal disorder as another who seeks treatment. In these days when a tortious party frequently takes charge at once of

supplying the injured one with medical treatment a rigid application of the suggested rule might drive a plaintiff to the ranks of his adversaries' employes in order to prove an important feature of his case. Next, it seems to me that the skirmishes back and forth to exclude, or admit, such testimony are largely in the nature of sham battles, for if the testimony should be excluded by the application of the rule suggested by the defendant it would promptly make its appearance in the form of a hypothetical question accompanied by the physician's opinion-answer. And finally to employ the arguments urged upon us as the reason for the creation of another fine departure in a branch of the law of evidence, which is already vexed with too many subtle distinctions, we feel might impede the cause of justice as frequently as it would serve a useful purpose; especially when the practice has been long otherwise established. These being my conclusions it follows that in my opinion the court below committed no error in the reception of the evidence to which defendant objected.

RAND, J., concurring in part and dissenting in part: I concur with Mr. Chief Justice CosHow in holding that the testimony of Dr. Alan W. Smith of the statements and declarations which were made to him by plaintiff after the commencement of the trial and for the purpose of preparing him to testify as a witness in her behalf, they not having been made by plaintiff for the purpose of obtaining advice or treatment, were not admissible and that it was error for the court to admit such testimony, but I can not concur in holding that the opinion based on such statements was admissible or that the admission of the declarations themselves, or of an opinion based thereon, was not reversible error. I do not think that it can reasonably be

said that the testimony of the physician in stating that she told him that she had lost weight and was extremely nervous because of the accident was harmless. I think that the error in admitting this testimony was prejudicial to defendant and that the court should presume it to be harmful and not harmless.

For these reasons, I think the judgment should be reversed and a new trial ordered.