**Dorothy S. WALKER, Appellant,**

v.

**WEST COAST FAST FREIGHT, Inc., a Corporation, and M. L. Burr, Appellees.**

**No. 14788.**

United States Court of Appeals
Ninth Circuit.

May 22, 1956.

---

Peterson & Pozzi, Nels Peterson, Frank Pozzi, Burton J. Fallgren, Portland, Or., for appellant.

Koerner, Young, McColloch & Dezendorf, John Gordon Gearin, Joseph Larkin, Portland, Or., for appellees.

Before DENMAN, Chief Judge, and ORR and LEMMON, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of the United States District Court for the District of Oregon which, as the result of a jury verdict, awarded appellant only $1,500 for injuries caused by the negligence of the appellees. Appellant seeks a new trial contending that she was improperly limited in the presentation of evidence of injury by the District Court's construction of the pretrial order, that prejudicial evidence was improperly admitted, that the jury was guilty of misconduct in awarding an inadequate verdict in light of her permanent injuries, and that the District Court erred in giving and rejecting certain jury instructions.

Appellant contends that the District Court erred in refusing to allow her to show pain and suffering in child birth and the necessity of shortening the gestation period to seven and one half months caused by her injuries. The District Court stopped her attorney in the midst of discussing this item of damage in his opening statement and refused to allow the presentation of evidence on the point because appellant had failed to disclose such a contention at the pre-trial conference. Appellant urges that the pre-trial order when construed with information known by appellees covers such an element of damage.

The pre-trial order lists as the injuries caused by the accident the following:

"That as a proximate result of the negligence of the defendants and each of them, plaintiff was forced off the road to avoid a head-on collision with the motor truck and caused this plaintiff severe personal injuries, among which were numerous bruises and contusions to the plaintiff's body, severe brain concussion and brain damage, severe physical and mental shock and physical and mental pain and suffering, *a severe tearing, twisting and wrenching of the tendons, muscles, ligaments, bones, nerves and soft tissue of her* neck, back, *pelvic area, right hip and leg,* injuries to her upper chest, and aggravation of pre-existing arrested tuberculosis, from all of which plaintiff was rendered sick, sore, nervous and distressed, that plaintiff has permanent injuries to her head, neck, back, right hip and leg, and the internal organs of her chest, and will be permanently afflicted with the results of aggravation and dissemination of said tuberculosis, and has been damaged in the sum of $75,-000.00 general damages." [Emphasis added.]

Appellees' attorney knew that appellant was pregnant at least six months before the trial since she was unable to have X-rays taken at his request because of the advice of her obstetrician. However, for the hearing on appellant's motion for a new trial he executed an affidavit that:

"at no time did I have any knowledge that plaintiff sustained or was going to claim an impairment of the child bearing functions or difficulties in child bearing until plaintiff's attorney first attempted to advise the jury of such a claim at the time of trial."

Fed.Rules Civ.Proc. rule 16, 28 U.S.C.A. provides that a pre-trial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." One major purpose of such an order is to eliminate surprise by sharpening and simplifying the issues which must be tried. The District of Oregon has strictly required the disclosure of "all legal and fact issues" at the pre-trial conference since "surprise, both as a weapon of attack and defense, is not to be tolerated under the * * * Federal procedure" and the "rules outlaw the sporting theory of justice from Federal courts." [1]

1. Burton v. Weyerhaeuser Timber Co., D.C., D.Or.1941, 1 F.R.D. 571, 572. In

3 Moore's Federal Practice par. 16.11 it said that "The philosophy of Rule 16 and

Here, in effect, appellant asked the District Court to require appellees' counsel to connect the appellant's pregnancy with the claimed injury of the pelvic area and the hip deducing that appellant would have difficulty in child birth and claim damages. If appellees' counsel had had the phrase from the pre-trial order " * * * a severe tearing, twisting and wrenching of the tendons, muscles, ligaments, bones, nerves and soft tissue of her * * * pelvic area, right hip and leg * * * " before him when he learned of her pregnancy, he might well have concluded that it was more probable than not that appellant might have some trouble in child birth and claim damages for her disability. However, this would have placed upon him the burden of preparing for a contention which might never arise and which would not be hard to overlook. It seems inconsistent with the purpose of clarification and simplification of issues to place upon a party the burden of connecting subsequently discovered facts with allegations buried in the pre-trial order and acting upon consequences which might come about.

Assuming appellant had no intention of catching appellees off guard at trial, she easily could have moved for an amendment to the pre-trial order to specifically include such a claim for damages. Even after appellant's counsel was stopped by the trial judge while he was discussing this issue with the jury, no such motion was made.

The District Court did not err in this respect.

▆▆ The next specification of error concerns the admission by the District Court of testimony of Doctor Jones, a medical expert testifying in behalf of appellees who had examined appellant at appellees' request. Jones was asked to "relate to the jury what this lady [appellant] told * * * [him] * * * with reference to how she got hurt." Appellant objected that the answer was "not a history relating to the witness as a treating doctor." The objection was overruled, and Dr. Jones testified as to what appellant had told him. Her statement as recounted by Jones contradicted her testimony at trial in many important respects.

Appellant contends that allowing in this testimony was reversible error since

"A physician consulted by plaintiff in an action for personal injuries, for the purpose of qualifying him to testify, may not, in testifying, repeat what the plaintiff told him as to how the accident occurred, or as to past suffering or nervousness." [2]

However, Dr. Jones was *appellees'* medical expert who had examined appellant and the story he told was a statement used *against* her. A different situation is presented in such a case than where a personal-injury-plaintiff's doctor seeks to recount the plaintiff's self-serving hearsay. A statement as to how an injury occurred would not qualify under the "statements of physical condition" exception to the hearsay rule in either case,[3] but a plaintiff's statement to defendant's doctor would be properly admissible *against* the plaintiff under the "admission of a party" hearsay exception.[4] It could also be used to impeach a plaintiff as a prior inconsistent statement.[5] Wig-

of the Federal Rules as a whole is exemplified by the decision in Burton v. Weyerhaeuser Timber Co."

See Cherney v. Holmes, 7 Cir., 1950, 185 F.2d 718, and cases collected in 22 A.L.R.2d 599 (1952).

2. Reid v. Yellow Cab Co., 1929, 131 Or. 27, 279 P. 635, 67 A.L.R. 1.

3. See Wigmore on Evidence § 1722 (3d ed., 1940).

4. Wigmore on Evidence § 1048 et seq. (3d ed., 1940); Link v. Eastern Aircraft, etc., 1948, 136 N.J.L. 540, 57 A.2d 8.

5. Wigmore at §§ 1017–1018; Since this was a prior inconsistent statement of a party to the action, no foundation for the impeachment was necessary. See, e. g., Tuthill v. Alden, 1948, 239 Iowa 181, 30 N.W.2d 726.

more points out that statements to a physician may be used against a party in such a fashion and comments "under both of those principles, the limitations of the * * * [Statements of Physical Condition] * * * Hearsay Exception of course have no bearing." [6]

There was no error here.

■ Appellant next asserts that the jury was guilty of misconduct in awarding her only $1,500 since the jury found appellees responsible for her injuries and her medical and hospital expenses were shown to be $956.13. This means that she was awarded less than $550 for general damages when there was testimony that she had had numerous injuries as a result of the accident which had required hospitalization, that she would probably have to have an operation, and that she would probably have pain the rest of her life.

The District Court refused to grant a new trial on this ground pointing out that "this is a consistent verdict if the jurors did not believe some of * * * [appellant's] * * * physicians * *" One of appellant's medical experts did not believe that her injuries were permanent or too serious, and Dr. Jones, testifying for appellees, indicated that he did not think surgery was necessary for appellant's spinal condition and that her pain would disappear.

The verdict is consistent with a conclusion of liability but a disbelief of the assessment of appellant's injury by her doctors. The jury was free to accept the testimony of the medical experts for either side.

■ Appellant finally contends that the trial court erred in refusing to give one instruction and in giving three others. However, her attorney failed to raise these objections until the motion for a new trial. F.R.C.P. 51 in part provides:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto *before the jury retires* to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." [Emphasis added.]

Even assuming a Court of Appeals has the power to notice "plain error" to correct a miscarriage of justice,[7] this is not a case for the exercise of such a power. The District Court failed to give an instruction estimating appellant's life expectancy under the Standard Mortality Tables, but appellant was seriously afflicted with tuberculosis, and the tables give no figures as to the life expectancy of such invalids.

The following portions of the instructions are complained of as judicial comment on the evidence unlabeled as such.

"Mrs. Walker contends that she has been, and there is evidence that she suffered injury to her coccyx and injury to her low back which at least one physician says is permanent, at least there is a dispute on that point so you can consider whether or not she has suffered permanent injury to her back and to her coccyx.

* * * * * *

"The greater a person's interest in the case, the stronger is the temptation to false testimony, and the interest of the plaintiff is of a character possessed by no other witness.

"Manifestly, she has a vital interest in the outcome of the case. This

6. Wigmore at § 1723. Also see cases collected in 67 A.L.R. 34.

7. Some Courts of Appeal have asserted such a power despite the language of Rule 51. See Hite v. Western Maryland Ry., 4 Cir., 1954, 217 F.2d 781, certiorari denied 1955, 349 U.S. 960, 75 S.Ct. 890, 99 L.Ed. 1283; O'Malley v. Cover, 8 Cir., 1955, 221 F.2d 156; Allen v. Nelson Dodd Produce Co., 10 Cir., 1953, 207 F.2d 296. This Court asserted such a power to reverse in cases of plain error *before* the enactment of Rule 51, but apparently read the Rule literally in Lynch v. Oregon Lumber Co., 9 Cir., 1939, 108 F.2d 283, and insisted that objections to jury instructions be made to the District Court in all cases.

interest is one of the matters you may consider along with other attendant circumstances in determining the credence you will give to her testimony."

In light of the instructions as a whole, these excerpts are not a manifest injustice to appellant justifying this Court in ignoring the text of Rule 51.

The judgment is affirmed.