SYRACUSE BROADCASTING CORPO-
RATION, Plaintiff-Appellant,

v.

Samuel I. NEWHOUSE, The Herald Company, The Post-Standard Company and Central New York Broadcasting Corporation, Defendants-Appellees.

No. 51, Docket 25074.

United States Court of Appeals
Second Circuit.

Argued Dec. 4, 5, 1958.

Decided Nov. 5, 1959.

Joseph W. Burns, New York City, Smith & Sovik, Syracuse, N. Y. (Arthur C. Kyle, Monticello, N. Y., of counsel), for appellant.

Bond, Schoeneck & King, Syracuse, N. Y. (Charles Goldman, of Goldman, Evans & Goldman, New York City, Tracy H. Ferguson, of Bond, Schoeneck & King, Syracuse, N. Y., of counsel), for appellees.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

In November of 1952 plaintiff, the Syracuse Broadcasting Corporation, filed suit in the Northern District of New York against Samuel I. Newhouse, the Herald Company, the Post-Standard Company, and the Central New York Broadcasting Corporation, alleging violations of the Sherman and Clayton Acts. Plaintiff (WNDR) and the Central New York Broadcasting Corporation (WSYR and WSYR–TV) are broadcasting corporations located in Syracuse, New York. The other two corporate defendants are the sole daily and Sunday newspapers in that city. The Post-Standard Company is wholly owned by the Herald Company. Herald Company and Central New York Broadcasting Corporation in turn are in the control of the individual defendant Samuel I. Newhouse. The district court granted summary judgment for the defendants on one of plaintiff's claims and dismissed the others for failure to state claims upon which relief could be granted. On appeal, Syracuse Broadcasting Corporation v. Newhouse, 2 Cir., 1956, 236 F.2d 522, we agreed with the district court that plaintiff was not entitled to go to trial on its monopoly charge under Section 2 of the Sherman Act, 15 U.S.C.A. § 2, its complaint of mergers and interlocking directorates in violation of the Clayton Act, 15 U.S.C.A. §§ 18 and 19, and its allegation that defendant newspapers refused to accept advertising unless WSYR was also patronized. However, we reversed the judgment below in part and remanded the cause to the district court for further proceedings below. We held that the "interests of justice" required a trial of the remaining issues—i. e., the charge of discrimination in violation of Section 2 of the Clayton Act, 15 U.S.C.A. § 13; and the charge under Section 1 of the Sherman Act, 15 U.S.C.A. § 1, that a conspiracy existed to restrain trade to plaintiff's damage by the use of a unit rate for advertising in the two newspapers, by the circulation of false rumors about plaintiff, by the refusal to publish in the newspapers items favorable to the plaintiff, and by the giving of discriminatory advantages to WSYR.

After the remand pre-trial hearings were held; and, on February 12, 1957, on motion of the defendants, the district court, so as to particularize the issues involved, directed plaintiff to furnish defendants with the factual information upon which it based its claims. Extensions of time were granted and early in April plaintiff submitted a lengthy compliance document together with a demand that defendants admit all the facts contained therein. Conferences and argument were had with respect to plaintiff's compliance with the court's direction, and, after the submission of a further compliance document by plaintiff on June 20, the district court entered orders, dated July 27, 1957. These orders struck out plaintiff's demand that the defendants admit facts and also precluded plaintiff from presenting evidence with respect to those areas of alleged wrongdoing where the court believed that plaintiff had not properly complied with the pre-trial order to furnish factual information. Plaintiff did nothing until October when it moved that the preclusion order against it be modified in certain particulars and that the order striking its demand that defendants admit facts be vacated. After lengthy argument these motions of plaintiff were denied without prejudice to subsequent compliance. On November 14 the defendants moved to dismiss the complaint in its entirety on the grounds that plaintiff had failed to comply with an order of the court and that there was complete legal insufficiency in plaintiff's proof. At the same time plaintiff moved once more to have the preclusion order of July 27 modified, and also moved to have vacated the order striking its demand that the defendants admit facts. In a memorandum decision, dated January 10, 1958, the district court denied all plaintiff's requests; and, in granting defendants' motion, dismissed the complaint.

On this appeal plaintiff contests the order dismissing its complaint, the order precluding the admission of evidence, and the order setting aside its demand that the defendants admit facts. We shall deal with these contentions in that order.

## I

### Dismissal of Action

In dismissing the action the district court relied upon Rules 16 and 41(b), 28 U.S.C.A. Rule 16 appears to have been invoked on the theory that dismissal at the pre-trial stage is proper where it clearly appears that plaintiff will be unable to prove the allegations of its complaint. We hold, however, that Rule 16 confers no special power of dismissal not otherwise contained in the rules. Rule 12(b) and Rule 12(c) provide that summary judgment, under Rule 56, is mandatory when matters outside the pleadings are considered in disposing of a motion to dismiss for failure to state a cognizable claim, or for judgment on the pleadings. Disposition under Rule 56 would appear to be no less mandatory when analogous motions are considered at the pre-trial stage. Rule 56 played no part in the court's decision to dismiss. This is clear inferentially from the fact that the court did not rule upon defendants' motion for summary judgment which accompanied the motion to dismiss. Moreover, the court expressly stated that a reason for dismissal was plaintiff's failure to bring the action to the stage where the factual issues became clear.

While we do not question that Rule 41(b) authorizes a court in a proper case to dismiss a complaint for non-compliance with a pre-trial order,[1] we observe that here the district court did not regard plaintiff's response to the order for further information as sufficiently contumacious in and of itself to justify dismissal. Absent the court's erroneous reliance on Rule 16, there appears to be no reason to believe that the dismissal motion would have been granted. Dismissal with prejudice is a drastic sanction to be applied only in extreme situations, Gill v. Stolow, 2 Cir., 1957, 240 F.2d 669; Producers Releasing Corp. de Cuba v. PRC Pictures, 2 Cir., 1949, 176 F.2d 93, and here the preclusion order seems an ample penalty for any lack of cooperation on plaintiff's part.

We hold that dismissal was improper.

## II

### Preclusion Order

Interested persons have long been aware that the "big" case, such as is often encountered in antitrust and patent litigation, requires special administrative treatment. See The Report on Procedure in Anti-Trust and Other Protracted Cases Adopted by the Judicial Conference of the United States, 13 F.R. D. 62; Seminars on Protracted Cases for United States Circuit and District Judges, 21 F.R.D. 395, 23 F.R.D. 319. Especially is this true with respect to the situation that confronted the district court here—the formulization of the issues to be tried.

1. It has been suggested that language in Societe Internationale, etc. v. Rogers, 1958, 357 U.S. 197, 207, 78 S.Ct. 1087, 2 L.Ed.2d 1255 restricts Rule 41(b) to orders made during trial. In the context wherein this language occurred the Court merely indicated that Rule 41(b) was inapplicable to the disobedience of discovery orders because Rule 37(b) (2) was there expressly applicable and Rule 41 (b) conferred no greater power than the power contained in Rule 37(b) (2). To hold that Rule 41(b) only applies to orders made at trial would not only overrule a long standing interpretation to the contrary, First Iowa Hydro Electric Co-op. v. Iowa-Illinois Gas & Electric Co., 8 Cir., 1957, 245 F.2d 613, 628, certiorari denied 355 U.S. 871, 78 S.Ct. 122, 2 L. Ed.2d 76; Blake v. De Vilbiss Co., 6 Cir., 1941, 118 F.2d 346; Wisdom v. Texas Co., D.C.N.D.Ala.1939, 27 F.Supp. 992, but would ignore the fact that in the same sentence permitting dismissal for disobedience of an order, Rule 41(b) permits similar disposition when plaintiff fails to prosecute his action. This latter provision could hardly be construed as applying only after the commencement of trial.

"It is not practical to proceed in these cases as in a lawsuit of ordinary complexity and bulk; that is, to let the parties exhaust the cross fire of pleading, to conduct open-court pre-trial hearings, or to let counsel try the case as they please. The potential range of issues, evidence and argument is so great, and the necessities of adversary representation so compelling, that the activities of counsel will result in records of fantastic size and complexity unless the trial judge exercises rigid control from the time the complaint is filed  \*  \*  \*

"Whatever may be the objections and difficulties to the specification of issues in ordinary actions, the necessity for such specification in the case with which this report is concerned is so great as to require that it be done no matter what the objection or difficulty. Unless it is done, the hearing cannot be confined to its proper limits, counsel are at a loss as to their positions, and the judge is unable to relate the evidence to issues which are in dispute or to limit it to that which is relevant." Report of Judicial Conference, supra, 13 F.R.D. at pages 66–67.

■ That this is a "big" case is apparent, both from the comments in our prior opinion, 236 F.2d 522, 526, and the approximately 6300 pages of record which have been produced before this case has even gone to trial. Consequently, the district court was correct in taking vigorous measures to see that the issues were clearly defined so that the whole case might be kept within manageable proportions.

■■ At the same time, however, it must be remembered that a preclusion order is a drastic remedy, Matheny v. Porter, 10 Cir., 1946, 158 F.2d 478, and while the district court clearly has the power to issue such an order, Walker v. West Coast Fast Freight, Inc., 9 Cir., 1956, 233 F.2d 939, 3 Moore's Federal Practice 1130 (2d edition 1948), that power should be exercised only to the extent necessary to achieve the desired purpose—that is, an entirely just disposition of the case in a speedy and efficient manner. Of course, in view of its intimate knowledge of the facts, discretion must be accorded the district court in its resolution of these administrative problems. This of necessity must be so, but when we are convinced that the court below has exceeded a proper discretion in that the order imposed was too strict or was unnecessary under the circumstances, we would be remiss in our duties if we did not set that order aside.

With these considerations in mind we examine each of plaintiff's objections to the preclusion order of July 27, 1957.

By the court order of February 12, 1957 plaintiff was required to produce further factual information. The information to be furnished was set forth in numbered itemized paragraphs of that order. This numbering system was preserved in the preclusion order of July 27, 1957. On appeal plaintiff objects to the court's treatment of plaintiff's offered compliance with the demands set forth in paragraphs I(e), I(g), III(a), IV(b), V(b), V(d), V(e) and VI(a). Items I(e) and I(g) deal with the extent of interstate commerce involved in the case. Item III(a) relates to rumors and false statements allegedly circulated by defendants. Item IV(b) concerns defendants' alleged refusal to publish news items favorable to plaintiff. Items V(b), V(d) and V(e) require specification of plaintiff's charge that defendant newspapers gave discriminatory advantages to defendant radio station WSYR. Item VI(a) involves allegations of price discrimination.

■ 1. *Volume of interstate commerce.* Plaintiff objects to Items I(e) and I(g) of the order requiring it to produce further information. Item I(e) seems to call for a statement of the total volume of interstate commerce that involved those products concerning which plaintiff alleged a restraint within the geographic area the court had previously established as applicable. Item I(g) calls for a statement of the extent of plaintiff's participation in this commerce. We have grave doubts as to the relevance of each of these items. We understand

that to establish jurisdiction under 15 U.S.C.A. § 15 it is only necessary to allege acts in restraint of interstate commerce and injury to plaintiff resulting therefrom. Having done this, the volume of interstate commerce which might be affected is irrelevant, Times-Picayune Pub. Co. v. United States, 1953, 345 U.S. 594, 611, 73 S.Ct. 872, 97 L.Ed. 1277, as is also the question of whether plaintiff himself engages in interstate commerce, Ring v. Spina, 2 Cir., 1945, 148 F.2d 647, 651, 160 A.L.R. 371, certiorari denied 335 U.S. 813, 69 S.Ct. 30, 93 L.Ed. 368.

■ Possible irrelevance, however, does not destroy the validity of a preclusion order. If in fact the items are irrelevant no prejudice can result from preclusion of evidence as to them. The possibility that the objecting party may be incorrect in his claim of irrelevance suggests that the prudent course would be for it to comply with the order for further information while at the same time stating clearly its objection that the information required is irrelevant.

■ Item I(g) relates to matters peculiarly within plaintiff's knowledge. Plaintiff failed to comply with the order to produce this information, and the preclusion order with respect to this item is justified. Item I(e), however, relates to a larger and less definite subject. Plaintiff stated that it had no special knowledge of the total amount of interstate commerce in the fields of newspaper publishing and radio broadcasting in the established geographic area. Moreover, the court below seems to have regarded this information it sought from plaintiff as relevant, not to plaintiff's case, but to an issue which is essentially a matter of defense. We conclude that it was error at this stage of pre-trial examination to preclude plaintiff, even though it failed to comply with this portion of the order for further information, from at any time introducing whatever evidence might become available to it on this point.

■ 2. *Circulation of false statements among plaintiff's advertisers.*

Item III(a) of the order for further information requires the plaintiff to substantiate its accusation that defendants have circulated false statements in an effort to drive plaintiff out of business. Information was ordered produced relating to the nature of such statements, the time and place each such statement was made, the name of defendants' representative who initiated it, and the person to whom each statement was communicated. Item III(a) relates to two types of alleged false statements or rumors: articles appearing in defendant newspapers casting doubt upon plaintiff's ability to remain in business, and similar oral statements originated and circulated by defendants' agents. In attempted compliance with this order plaintiff, in Exhibit M, listed eighteen instances where its negotiations with advertisers had been broken off after the advertiser had read allegedly false and malicious articles in defendant newspapers concerning plaintiff's financial condition and its ability to remain in business. Plaintiff also listed several instances of alleged oral statements claimed to have been circulated by defendants' agents. We hold that evidence as to statements set forth in newspaper articles should not be precluded, and we affirm Judge Brennan's disposition of the allegations concerning oral rumors.

■ 3. *Refusal to publish news items favorable to plaintiff.* Plaintiff alleged that the defendant newspapers consistently refused to publish news items favorable to plaintiff. Item IV(b) of the order for further information called for plaintiff to specify the news items submitted and the date and manner of their rejection. The court held that plaintiff's compliance, found principally in Exhibit N, was insufficient, and therefore evidence on this point was ordered precluded. From a reading of Item IV(b) of the preclusion order, the court appears to have objected to Exhibit N because copies of the rejected news items were not submitted and the manner of each rejection was not stated with sufficient

precision. Since Exhibit N alleges that most of the news items were submitted orally to defendant newspapers, and orally rejected, greater specificity as to those items in Exhibit N would appear to be impossible. Therefore Item IV(b) of the preclusion order must be set aside to that extent. However, the court was correct in precluding evidence of items contained in another exhibit, Exhibit R, since there is no suggestion that these items were submitted for publication. As to still other exhibits, Exhibits I and K, the basic compliance document alleges sufficient incidents of submission and rejection. Therefore evidence as to these items should not be precluded.

4. *Discriminatory advantages given WSYR.* Item V(b) of the order for further information requires plaintiff to enumerate the general methods by which defendant newspapers gave discriminatory advantages to defendant radio station WSYR. The court held that plaintiff's compliance was such as to preclude all evidence of alleged discriminatory practices save as to the issues of free advertising,[2] specifically treated in V(c); preferred page position, specifically treated in V(d); and secret rebates, specifically treated in V(e). The court acted properly in ordering that evidence of any other alleged discriminatory practices be precluded.

Item V(d) of the preclusion order deals with the issue of preferred page position. Notwithstanding Item V(b), discussed in the preceding paragraph, Item V(d) seems to preclude all evidence tending to support this allegation. Even so broadly construed, however, the preclusion order is correct. Plaintiff's exhibits do not indicate the dates on which the alleged discriminatory acts occurred, nor do they allege

that plaintiff was denied page locations which it sought.

Item V(e) relates to secret rebates. We find no error in the way this point was disposed of by the district court.

5. *Price discrimination.* The only alleged method of price discrimination now in the case relates to the free advertising alleged to have been given WSYR by the two defendant newspapers. Item V(c) of the preclusion order clearly states that plaintiff's right to introduce evidence on this issue has been in no way curtailed. Hence plaintiff may not object to Item VI(a) which precludes evidence as to other methods of price discrimination.

### III

### Motion to Compel Admission of Facts

In response to the order for further information plaintiff submitted a "compliance document" with appended exhibits. This document enumerates a series of more than thirty acts and plaintiff claims each one constitutes a violation of the anti-trust laws. The document is comprehensive and represents a summary of plaintiff's cause of action. Upon submission of this document plaintiff moved that under Rule 36 defendants be compelled to admit as true the statements of fact contained therein. The motion was denied. In so doing the court was clearly correct. Rule 36 was designed to eliminate the necessity of proving essentially undisputed and peripheral issues of fact. It has no bearing on the present situation. See 4 Moore, Federal Practice § 36.04 (1950 Ed.).

The decision below is reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

2. See discussion *infra* under "Price Discrimination."

"Free advertising" is not spelled out by court or counsel, but we would think the plaintiff's evidence on this point should not be restricted. Plaintiff's allegations relative to free advertising are two-fold—free advertising given to WSYR and free

advertising given to WSYR's advertisers. We understand the preclusion order does not prevent evidence as to each. We further understand that the term "advertising" is sufficiently elastic so as to encompass such avenues of communication as entertainment columns, general news articles, and the like.