**DALE HILTON, INC., Plaintiff,**

v.

**TRIANGLE PUBLICATIONS, INC.,** Jonathan Logan, Inc., Teena-Paige Fashions, Inc., Federated Department Stores, Inc., Allied Stores Corporation, B. Altman & Co., Inc., Best & Company, Inc., Associated Dry Goods Corporation, City Stores Company, Hecht Co., Woodward & Lothrop, Inc., and Gimbel Brothers, Inc., **Defendants.**

United States District Court
S. D. New York.
May 2, 1961.

Regan, Goldfarb, Powell & Quinn, New York City, for plaintiff. Sidney P. Howell, Jr., New York City, George H. Davis, Jr., Washington, D. C., and Monte E. Wetzler, New York City, of counsel.

Reich, Spitzer & Feldman, New York City, for defendant Best & Company, Inc. M. James Spitzer, and Robert S. Levy, New York City, of counsel.

METZNER, District Judge.

This is a private antitrust suit seeking treble damages and an injunction pursuant to the provisions of the Clayton Act and the Sherman Act, 15 U.S.C.A. §§ 1 et seq., 12 et seq.

The plaintiff, a fashion retailer who conducted a nationwide mail order business in wearing apparel and apparel accessories for teen-age girls, alleges that a conspiracy existed among the defendants to restrain competition in mail order fashion advertising in the "under-20 market" and to monopolize this market. More specifically, the plaintiff charges that the defendants conspired to discriminate against the plaintiff in its advertising in the magazine Seventeen through the fixing of space quotas and restrictions on the number of items that could be displayed by plaintiff in the space bought, that merchandise selling below specified prices could not be advertised by plaintiff in the magazine, and that ultimately the magazine refused to accept any advertising from the plaintiff. Finally, the defendants are charged with fixing prices for fashions advertised in the magazine. The defendants in this action are Triangle Publications, Inc., the publisher of Seventeen (a magazine with nationwide distribution), two manufacturers of teen-age feminine apparel and

9 so-called "prestige" department stores which were among the advertisers in Seventeen.

Defendant Best & Co., one of the department stores, moves, under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for an order granting summary judgment in its favor. A note of issue and a statement of readiness have been filed, and extensive pretrial discovery-deposition procedures have been completed by all parties.

The moving party contends that plaintiff has failed to uncover any competent independent evidence establishing a conspiracy or connecting the defendant Best with such a conspiracy. It takes the position that there is no genuine issue of fact as to the issues, and since it would be entitled at the close of the plaintiff's case to a directed verdict on the state of the evidence as revealed in the papers, it is now entitled to summary judgment.

■ Contrary to plaintiff's position that summary judgment is not appropriate in antitrust litigation, especially if a charge of conspiracy is involved, it is abundantly clear that the remedy is available if the moving party satisfies the requirements for granting the motion. Syracuse Broadcasting Corp. v. Newhouse, 2 Cir., 1956, 236 F.2d 522; United States v. Celanese Corp. of America, D.C.S.D. N.Y.1950, 91 F.Supp. 14; United States v. General Instrument Corp., D.C.D.N.Y. 1949, 87 F.Supp. 157. The fact that the violation is bottomed on a charge of conspiracy does not change this rule. Morgan v. Sylvester, D.C., 125 F.Supp. 380, affirmed 2 Cir., 1955, 220 F.2d 758, certiorari denied 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768, petition for rehearing denied 350 U.S. 919, 76 S.Ct. 201, 100 L.Ed. 805; Fishman v. Teter, 7 Cir., 1943, 133 F.2d 222.

■ Summary judgment procedure is intended to permit a party to pierce the allegations of fact in the pleading and to obtain relief where facts set forth in detail in affidavits, depositions and admissions on file show that there are no genuine issues of fact to be tried. Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469, 472; 6 Moore's Federal Practice § 56.04[1] (2d Ed. 1953).

■ A party moving for summary judgment bears the burden of showing the absence of any genuine issue of fact requiring a trial and also that there is no real question as to the credibility of its evidentiary material. Colby v. Klune, 2 Cir., 1949, 178 F.2d 872; Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464; 6 Moore's Federal Practice § 56.15[3] and [4]. (2d Ed. 1953). Opportunity for cross-examination and obtaining "demeanor" testimony, especially where the facts are peculiarly within the knowledge of the moving party, is usually determinative in denying a motion for summary judgment. Arnstein v. Porter, supra; Colby v. Klune, supra; Subin v. Goldsmith, 2 Cir., 1955, 224 F.2d 753. The Court of Appeals for this circuit has stated that where there is the slightest doubt as to the facts the motion for summary judgment should be denied. Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130, 135; Bozant v. Bank of New York, 2 Cir., 1946, 156 F.2d 787.

In support of its motion Best has submitted the affidavit of Rignel, its advertising manager, to the effect that he never heard of the plaintiff nor saw its advertisements in Seventeen, nor did he or any other officer or employee of Best ever participate in any conspiracy directed against the plaintiff, nor complain to Seventeen about plaintiff's advertising, nor advise Seventeen that restrictions be placed on plaintiff's advertising. He never met, talked with or corresponded with the advertising director or the advertising manager of Seventeen or with Koontz, an employee of the magazine. Rignel states that the advertising agency for Best only places the order for advertisements on Best's behalf, and neither prepares the copy nor selects the media. Rignel further denies that he ever dis-

cussed the plaintiff with his advertising agency.

Insofar as editorial credits are concerned, the affiant points out that they are a common and established method of advertising with magazines and with such newspapers as the New York Times and the New York Herald Tribune. Editorial credits consist of a picture of an item of apparel with a legend underneath indicating where the merchandise may be purchased and the approximate retail price. The stores referred to are usually scattered throughout the country. Before printing such material in the magazine, the publisher circularizes a number of stores to ascertain if they are interested in having their names associated with the article in question. This is done to make sure that the store has an available supply to meet any demand generated by the editorial credit. The retail price is independently set by each store in its reply to the inquiry from the magazine. A number of samples of this type of editorial credit from various media are attached to Rignel's affidavit, along with the form of inquiry sent out by each of the media.

Similar affidavits were submitted by Margolis, the promotion director of Best, and McCausland, the vice president in charge of the merchandise office. Leonard Gussow, the head of the Gussow-Hyman Advertising Agency, states that the agency handles many accounts, including Best, that placed advertisments in Seventeen. He never discussed with the employees of Seventeen the fixing of price floors by the magazine, except to receive notification thereof, and he never discussed with Best, directly or indirectly, any matter relating to the plaintiff or its advertisements. Best never tried through him to exert any pressure on Seventeen.

The moving party has also submitted the affidavits of Taylor, the advertising director of Seventeen, Swaney, the advertising manager of Seventeen, and McMurtry, the fashion director of Seventeen, all of whom had been deposed by the plaintiff. They all deny that they ever received any complaint, directly or indirectly, from Best regarding the plaintiff. They never conferred with Best regarding the advertising policies of Seventeen. The depositions of these affiants indicated that Seventeen decided without consultation with anyone that space restrictions and price floors be placed on mail order advertising, which plaintiff complains were directed at its competitive position in the market.

In the pretrial deposition conducted by Best of the plaintiff, Gertrude Lit, the president of plaintiff, produced all available documentation relating to Best. Exhibits 1, 2 and 3 are interoffice memos from the files of Seventeen, indicating attempts made by salesmen to obtain advertisements from Best in cooperation with manufacturers unconnected with this lawsuit. Exhibits 10 through 15, 17 and 18 are documents which reflect the price floors fixed by Seventeen on May 7th, 1954, effective with the August issue of the magazine, and the distribution of these price floors to manufacturers and advertising agencies.

Exhibit 25 is a memorandum by Swaney to his staff, relating the problem raised by manufacturers using advertisements by small suburban specialty shops as an outlet for merchandise at reduced prices. This memorandum, dated April 24, 1953, states that "For the past few years our policy has been to deemphasize mail order advertising in Seventeen" by establishing quotas on chain store accounts, turning down new chain store advertisers and using fashion magazines as guides. The purpose of this policy is "to curtail and limit the amount of mail order advertising in the book." Plaintiff knew of the existence of this policy when it first advertised in the magazine and had been advised of certain restrictions at that time.

Exhibit 31 is a memorandum dated April 1, 1953, from Taylor to the advertising staff, indicating the rejection of

advertisements from W. T. Grant in conjunction with the policy of not accepting any new chain store advertising.

Exhibits 19, 22–24 and 26–30 consist of correspondence and memoranda regarding the Gussow-Hyman Advertising Agency, which have no relation to Best except for the fact that Best was one of many clients of this agency.

Exhibits 4–9, 16, 20 and 21 are the forms used in conjunction with editorial comment and concern Best's acceptance of such comment.

These exhibits neither individually nor collectively, nor in conjunction with any other proof brought to the attention of the court, can justify a finding of fact from which any inference could properly be drawn that Best was involved in the conspiracy as alleged by the plaintiff.

The plaintiff submitted answers to interrogatories propounded by Triangle, one of which asked for the name and address of every person who participated in every act of conspiracy as alleged in the complaint. The answer to this interrogatory does not mention the defendant Best or any of its employees. Further, in a 23-page recital of the claimed illegal practices and overt acts done in pursuance of the conspiracy, containing some 200 specifications, there is one reference to Best—that on one occasion an advertisement appeared in Seventeen which contained more items on the page than had been permitted the plaintiff.

Mrs. Lit testified in her deposition, taken by Best, that in various conversations with employees of Seventeen they mentioned Best as one of the department stores that had made objection to the advertising placed by the plaintiff in Seventeen. She claims she was also told that Best had urged Seventeen to keep low-priced mail order merchandise out of the magazine. All of these alleged conversations are hearsay statements insofar as Best is concerned, and would not be competent independent proof showing Best's willful participation in the alleged conspiracy. Syracuse Broadcasting Corp. v. Newhouse, supra; Flintkote Company v. Lysfjord, 9 Cir., 1957, 246 F.2d 368.

On the basis of the above recital Best has shown sufficient to call upon plaintiff to come forward and controvert the claim that there is no genuine issue of fact.

In opposition to this motion the plaintiff relies upon what it is claimed employees of Seventeen told Mrs. Lit, to which I have already made reference. In addition, plaintiff has submitted the affidavit of Justine Norton, the account executive of an advertising agency which handled plaintiff's advertising. Mrs. Norton, as did Mrs. Lit, referred to statements by employees of Seventeen, to the effect that Best would not stand for unrestricted mail order advertising of unbranded or low-priced fashions. She stated that she was informed by these employees that they were more interested in attracting and holding advertising of stores such as Best and therefore were dedicated to reducing mail order advertising of the type engaged in by plaintiff in order to leave the mail order market to Best and the other "prestige" stores. Her affidavit offers no more competent proof than Mrs. Lit offered in her deposition.

The attorney for the plaintiff also submitted his own affidavit in opposition to this motion. He states that

"it is clear that the deposition procedure has far from exhausted the sources of potential evidence which we expect to develop on trial."

Rather than indicate the sources of potential evidence which the plaintiff expects to develop on the trial, its attorney points out that *Best* has failed to submit affidavits or take the depositions (in addition to those referred to by Best) of three space salesmen employed by Seventeen, its general manager and its publisher, all of whom might have knowledge of the facts. Some of these are persons who Mrs. Lit claims told her that Best was involved in the conspiracy. The attorney's position is that Best should have taken

their depositions or submitted their affidavits and that the failure of Best to do this justifies the denial of the motion for summary judgment. This viewpoint requires that the moving party must depose or take the affidavit of every possible witness having knowledge of the facts before the plaintiff may be called upon to assume any burden to defeat the motion for summary judgment. Further, the argument seems to be that, while the defendant has submitted 7 affidavits of persons alleged to have knowledge of the facts, its failure to submit five additional affidavits of similar persons must defeat the motion on the basis of the attorney's statement that these five possible affiants would supply unfavorable testimony for the defendant. I do not find this to be sufficient to deny the motion for summary judgment.

The affidavit then goes on to state,

"Suffice it to say that each of the six foregoing persons have been interviewed by representatives of the plaintiff at various times and some, such as Walter Koontz, have been extensively so interviewed. We have every expectation that their stories will be told in full on trial of this action and, I am prepared to represent, will, in every material respect, corroborate the story which Mrs. Lit has told in the course of some 1200 pages of recorded deposition."

The affidavit does not state that plaintiff is going to call these witnesses, and even if it did it would be insufficient. It merely expresses an "expectation" that their stories will be told on the trial.

The affidavit also refers to the deposition of Frances Hodges Lurie, merchandising director of Seventeen. There is nothing in that deposition from which evidence can be gleaned of Best's participation in the conspiracy. In relation to Mrs. Lurie, the affiant states that she is in a position,

"if called at trial, to testify as to the advertising tie-ins between the various manufacturer and retailer defendants."

"Advertising tie-ins" between manufacturer and retailers is a form of cooperative effort in which the advertisement indicates the name of the manufacturer and the retailer where the item may be purchased. According to Best, the manufacturer pays for the advertisement. In fact, Best never spent its own funds for any advertisement in Seventeen prior to the commencement of this litigation. This form of advertisement is open and notorious and can readily be found in all types of mass media carrying wearing apparel advertisements. The mere existence of such advertisement does not warrant the inference of wrongdoing on the part of the participants.

Plaintiff refers to the pretrial deposition taken by it of Swaney, the advertising manager of Seventeen, to the effect that all department stores advertising in the magazine objected to the type of mail order advertising engaged in by the plaintiff. This is a sweeping generalization, insufficient to predicate liability against Best when one realizes the number of advertisers in the magazine from all sections of the country.

Plaintiff also refers to the fact that, about a year after plaintiff was excluded from the magazine Seventeen, Best had advertisements in the magazine which contained more items on a page of advertising than had been allotted the plaintiff. From this it would draw the inference that, since Best reaped the benefits of the practices adopted by Seventeen, it must have been a party to the conspiracy.

It is plaintiff's position that

"nothing has been developed to reflect upon the circumstantial evidence of Best's participation in a deliberately contrived scheme to force plaintiff out of Seventeen and, thereby, out of business—that is to say, out of competing with Best for the sale of teenage fashions through mail order."

This assumption of a prima facie case based either on direct or circumstantial evidence is typical of the papers submitted by plaintiff on this motion. As the analysis of the papers has shown, such assumption is unjustified.

The affidavit concludes with the following paragraph:

"The only true and fair resolution of the head-on conflict between the plaintiff's testimony and the defendants—and, in this connection, I specifically include Best & Co.—must come at trial where, it is assumed, *all* witnesses will testify."

■ This is the state of the record as presented on the motion. It must be viewed from the position of the trial judge faced with a motion for a directed verdict at the completion of the plaintiff's case. Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967.

The factual evidence as gleaned from depositions, answers to interrogatories, and affidavits would support the granting of defendant's motion on the trial since no issue of fact would be presented for disposition by the jury. Plaintiff has failed to take the deposition of Best or of its employees, and the only testimony we have from them is contained in the affidavits submitted by Best on this motion. Unless plaintiff is to call these witnesses on the trial, it has waived its right to cross-examination. As was pointed out in Dyer v. MacDougall, 2 Cir., 1952, 201 F.2d 265, 268, it must be assumed that their testimony on deposition or on trial would conform to their affidavits. The statements by Mrs. Lit and Mrs. Norton as to what they were told by employees of Seventeen are hearsay insofar as Best is concerned. Plaintiff's attorney has interviewed employees of Seventeen and represents that "if called" they will substantiate the hearsay statements of Mrs. Lit and Mrs. Norton insofar as Best is concerned.

The very fact that plaintiff interviewed employees of Seventeen who it contends are conversant with favorable aspects for the plaintiff in this litigation removes it from the category of cases where the plaintiff must rely for its case on what it can draw out of the defendant. See Arnstein v. Porter, supra; Bozant v. Bank of New York, supra, and Subin v. Goldsmith, supra. These possible witnesses will not be defendant's witnesses, according to plaintiff's affidavit in opposition to this motion.

The affidavit of plaintiff's attorney does not satisfy the requirements of Rule 56 (e), which provides that affidavits

"shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

If for one reason or another affidavits could not be obtained from these people, their depositions should have been taken, which has not been done.

On the argument of the motion plaintiff took the position that it had been brought for the purpose of smoking out the evidence. It was called a substitute for pretrial discovery, and the statement was made that,

"Rather than pursue these other channels, Mr. Spitzer has elected to try to force the plaintiff into producing as much of the collateral evidence that we hope to be able to adduce at trial in the form of this motion."

This overlooks the fact that extensive pretrial proceedings were carried out by both sides. It is on the basis of such proceedings that the defendant has moved. In addition, defendant has submitted affidavits from personnel whom plaintiff has failed or refused to depose. Defendant is not interested in plaintiff's "collateral evidence", but rather in its direct and circumstantial evidence, either of which could establish a prima facie case.

■ Plaintiff has had the opportunity of cross examination by deposition. It

has had the opportunity of submitting documentary proof. Neither has produced sufficient to defeat this motion. There is the possibility of demeanor testimony, but demeanor testimony alone cannot defeat a motion for a directed verdict. Dyer v. MacDougall, supra.

Plaintiff's attorney did not state in his opposing affidavit (as required by Rule 56(f) ) the reasons why he could not present by affidavit facts essential to justify his opposition. However, the court called a conference of the attorneys for both sides to determine whether a continuance should be permitted so that affidavits could be obtained or depositions taken on behalf of the plaintiff.

At this conference plaintiff again took the position that because of the type of action involved it should not be called upon to produce anything more. It is of the opinion that it should not be called upon to divulge its testimony before trial. For example, in relation to the companion motion for summary judgment by B. Altman & Co., another defendant, plaintiff had incorporated by reference Mrs. Norton's affidavit in opposition to the Best motion. When asked about the relevancy of this affidavit to the Altman motion, counsel replied:

"Well, Best's name, I think, in the Norton affidavit is also the department store defendants, including Best, or Best and the other department store defendants. That is the way the affidavit was drawn, which, frankly, was done that way so that we would not be sparking any more in this motion than we had to at this point."

Further, plaintiff had relied on a portion of the transcript of Mrs. Lit's testimony, wherein she says she obtained information about a meeting from a Mr. Weiner. Weiner did not attend the alleged meeting and therefore this statement is double hearsay. When this was pointed out to counsel, he replied:

"I hope I did not imply that Mr. Weiner was the only manufacturer's witness we were relying on."

Who the other manufacturers are and what their testimony would be is nowhere disclosed. In this same discussion about Weiner, counsel stated, "Now, you are probing my case out."

Counsel was then afforded an opportunity to produce affidavits or depositions which the court felt were necessary to prevent the granting of the motion for summary judgment. Counsel was advised that very little was needed for this result to be achieved. One affidavit indicating a genuine issue of fact, from one of the many witnesses upon whom counsel was inferring he would rely, would be sufficient. Subsequently counsel notified the court by letter that nothing further would be submitted. The letter stated that voluntary cooperation by these witnesses had been refused and that as to taking depositions:

"Such a course is not only undesirable for obvious reasons but is simply impractical from the plaintiff's standpoint inasmuch as no funds whatsoever are available for this purpose."

The court does not know what is meant by "undesirable for obvious reasons". If the witnesses can only be produced by process of court, the use of a subpoena is just as harsh on the trial as on a deposition. If disclosure of testimony at this time is undesirable, plaintiff must assume the risk of having this motion granted. The validity of such a reason for denying the motion would make a mockery of Rule 56. The court as well as a party is entitled to know sufficient facts to defeat this motion before its time and effort are spent on what appears to be a long trial. In Engl v. Aetna Life Ins. Co., supra, the court overruled the contention that a party could hold back the production of evidence before a trial and still defeat a motion for summary judgment. The court stated:

"It is hard to see why a litigant could not then generally avail himself of this means of delaying presentation of his case until the trial. So easy a method of rendering useless the very valuable remedy of summary judgment is not suggested in any part of its history or in any one of the applicable decisions." [139 F.2d 473.]

In this case plaintiff is seeking, among other things, $18,000,000 as damages. Stating that the plaintiff is unable to expend the necessary funds for the purpose of taking depositions is not justification for failure to submit such depositions under Rule 56(f).

Motion granted. So ordered.