Max L. COWEN, Plaintiff,

v.

NEW YORK STOCK EXCHANGE and Mohawk Valley Investing Company, Defendants.

Civ. No. 10350.

United States District Court
N. D. New York.

Argued April 23, 1966.

Submitted May 2, 1966.

Decided July 12, 1966.

Ribyat & Cohen, Utica, N. Y., for plaintiff, Daniel S. Cohen, Utica, N. Y., of counsel.

Evans, Pirnie & Burdick, Hugh R. Jones, Utica, N. Y., and Milbank, Tweed, Hadley & McCloy, New York City, for defendant New York Stock Exchange, C. Richard Stafford, New York City, of counsel.

Ferris, Hughes, Dorrance & Groben, Utica, N. Y., for defendant Mohawk Valley Investing Co., John M. Liddy, Utica, N. Y., of counsel.

## MEMORANDUM DECISION AND ORDER

BRENNAN, District Judge.

Since matters outside of the pleadings are presented and not excluded by the court, for all practical purposes the motions here are considered as requesting a summary judgment dismissing the complaint in accordance with the provisions of F.R.Civ.P. 12 and 56. In effect, the motions challenge the sufficiency of the factual background and the applicability of legal principles thereto, which must be shown to sustain life in this litigation.

Briefly stated, the complaint invokes the provisions of Section 1 of the so-called Sherman Act. (15 U.S.C. § 1) in that it alleges a conspiracy by the defendants to terminate plaintiff's employment as a salesman of securities and to prevent his further employment in that capacity or business. 15 U.S.C. § 15, generally known as the Clayton Act, is invoked as affording the legal basis for this action which seeks a money judgment against the defendants for the damages sustained to be trebled under the provisions of the statute referred to above. A brief statement as to the relationship of the litigants and the present status of this action may be helpful in an understanding of this decision.

The New York Stock Exchange, hereinafter referred to as the "Exchange", requires no complete definition. It is a well recognized association through whose operations securities are purchased and sold and which maintains business relationships with clients and brokers engaged in a similar business over a wide spread geographical area. It is subject to the provisions of the Securities Exchange Act to the end that "the maintenance of fair and honest markets" in securities transactions are maintained in the public interest. 15 U.S.C. § 78b.

The Mohawk Valley Investing Company is a corporation with its principal place of business at Utica, New York and at all pertinent times was a member of the Exchange subject to its regulations in the matter of the sale and transfer of securities.

The plaintiff is a resident of Utica, New York and from 1957–1961 was employed as a salesman of securities by Mohawk, his activities being limited to an area of which the City of Utica may be considered as the center. The plaintiff sought and was granted registration with the Exchange in 1957 thereby becoming subject to its rules and regulations as such employee of a member thereof.

This action, commenced in 1964, is now in a position where it is ready for trial. Plaintiff's oral deposition has been taken by the defendants in which was developed the details of the controversy involved in this litigation. The plaintiff has taken the deposition of a former officer of the defendant Mohawk and has filed a note of issue designed to place the cause of action upon the trial

calendar of this court. Upon this motion, the defendant Exchange has filed the affidavit of a member of that organization who asserts familiarity with the facts of this controversy insofar as the Exchange is involved. This affidavit is supplemented by written exhibits alleged to be pertinent to the cause of action itself and to the contentions of the parties on these motions.

The underlying facts resulting in the termination of plaintiff's employment by Mohawk are not in dispute except in one particular which will be referred to below. Such facts will be briefly summarized.

A few weeks prior to March 21, 1961, the plaintiff, while in the employ of Mohawk, purchased for his own account three $1000. bonds of the Mohawk Air Lines. Each of said bonds was registered in the name of a former client, who was then deceased, and in the name of one of his daughters. The plaintiff, dealing with one of the daughters, purchased said bonds at less than the market price, knowing that the name of the deceased co-owner had been endorsed thereon without specific authority. The subsequent details are unnecessary except to state that the bonds were converted into stock certificates issued in plaintiff's name. Plaintiff then opened an account with the brokerage firm of Bache & Company at Utica, New York in the name of his wife. The stock certificates were sold for plaintiff's ultimate benefit through the above organization.

A short time later the attention of Mohawk was called to the above transaction by a representative of Bache & Company. Plaintiff was summoned to the office of Mohawk and questioned by A. J. Eckert, Jr., now deceased, the then president of Mohawk. As the result of this interview, Cowen was suspended from his employment and the Exchange was notified by Eckert by 'phone of the transaction as far as then known. Within a few days, Cowen was again summoned to Mohawk's office. The details of the transaction were again discussed. The profit resulting to the plaintiff, in

the total amount of about $500., was paid by plaintiff to Mohawk and reimbursement to the three owners of the bonds in the total amount of said profit was made by Mohawk. As of March 22, 1961, plaintiff's employment by Mohawk was terminated.

The plaintiff does not dispute the transaction as outlined above. He does not dispute, and it is not disputed in this litigation, but that said transaction was in violation of the rules and regulations which were binding upon the plaintiff in the matter of the performance of his duties as a security salesman. It appears to be plaintiff's contention that there was no intent on his part to violate his obligation either to his employer or to the clients and that at most, his action in the above transaction was the result of his lack of understanding of his obligations as a security salesman.

The viability of this litigation depends upon one item of evidence, the availability of which is in serious dispute. The plaintiff asserts that his discharge as an employee of Mohawk was dictated by instructions to said employer by an official of the Exchange. The plaintiff contends that he was told by Eckert on several occasions that Coleman of the Exchange had dictated that the plaintiff be discharged because of the facts disclosed by Eckert to the Exchange in the telephone conversations in which the details of the transaction, as known by Eckert, were disclosed. There appears to be no contention by the plaintiff that such oral statements by Eckert would be admissible against the defendants upon the trial of this action, same being barred by the hearsay rule. The plaintiff does contend however that the testimony of Eckert in an arbitration proceeding, to the effect that Mr. Coleman of the Exchange told Eckert that he would have to release the plaintiff from Mohawk's employment, would be admissible in evidence upon the trial of this litigation. The defendant Exchange, through the affidavit of Coleman, definitely and unequivocally denies that any such instructions were given to Eckert. His position is con-

cisely stated in the following quotation, taken from his affidavit—"I can state that I, acting individually and/or on behalf of the Exchange, did not request, instruct, demand or suggest that Mohawk dismiss plaintiff from its employ".

Another factual situation should be briefly referred to at this point. It is conceded that under date of April 8, 1963 the plaintiff sought the offices of the Exchange to the end that several grievances involving the actions of Mohawk be submitted to arbitration in accordance with rules or regulations applicable in the business of the sale of securities. As far as pertinent to the issue of plaintiff's discharge from his employment is involved here, same was framed by the charges in the document prepared by plaintiff and in the answer of the defendant Mohawk as appears in footnote below.[1]

It would seem sufficient to state that in paragraphs 7, 8 and 9 of the charging document, plaintiff submitted to arbitration the charge that Mohawk, by its action, had barred the plaintiff from further employment as a security salesman. In the document submitted to the arbitrators as an answer to plaintiff's charges, Mohawk set out in paragraphs 7, 8 and 9 factual details as its reply to plaintiff's last mentioned claim or grievance. Since both charges and answer are rather lengthy, reference to the documents themselves is made for an understanding of the grievance submitted, disputed and passed upon.

The controversy proceeded in the regular way and resulted in the order of the arbitrators dated November 19, 1963 dismissing the plaintiff's claims. We then turn to the questions before the court upon these motions in the light of the facts appearing as indicated above.

Defendant's motions may be said to rest upon three specific contentions viz; (1) that plaintiff has produced no admissible evidence upon which a finding that a combination or conspiracy existed between the defendants; (2) that the arbitration award, dismissing plaintiff's grievances, is binding upon the plaintiff and is available as a defense to both defendants; (3) that the antitrust laws invoked by the plaintiff are not available to him under the allegations of the pleadings and under the circumstances disclosed.

 An approach to the consideration of the above contentions is made with the understanding that broad latitude is afforded plaintiff in a private antitrust suit to establish his cause of

1. Paragraph 6 of plaintiff's charging letter: "On March 20, 1961, A. James Eckert called me into his office, and almost with tears in his eyes, told me that the New York Stock Exchange had called him on the phone repeatedly and instructed him to suspend immediately Max L. Cowen, for the following reasons:

1. Having bought securities from a party without having a brokerage license.

2. Having sold stock through Bache and Company when a salesman is not supposed to trade with another brokerage firm.

3. Making an excessive profit on a transaction."

Paragraph 6 of Mohawk's answer: "In or about the month of March, 1961 Mr. Cowen obtained from Mrs. Mardis Mosher Bowers, St. Johnsville, New York; Mrs. Margaret Mosher Hayes, St. Johnsville, New York and Mrs. Wilma Mosher Bowers, Mayfield, New York, three $1,000.00 Mohawk Airlines, Inc. 6% Convertible Debenture Bonds, registered in the name of Eugene D. Mosher, the father of each of the named ladies, and one each in the name of one of the daughters. Mr. Mosher had died on December 20, 1960, and at the advice of Mr. Cowen the name of the father was endorsed on each of the debentures by the co-owner. Mr. Cowen then agreed to pay a price substantially below the current market for the bonds and took them into his possession. He later converted them into 750 shares of Mohawk Airlines stock issued in his name. He then opened an account with Bache & Company in Utica in his wife's name and placed the certificates of stock for sale. The transaction was spotted in the New York Office of Bache & Company and as a result, Mr. Eckert discussed the case with Mr. Walter Colman of the Member Firms Department of the New York Stock Exchange. Thereafter Mr. Cowen was discharged."

action and that such suits may be said to be generally favored. Waldron as Executrix v. Cities Service Co., 2d Cir., June 6, 1966, 361 F.2d 671. We are admonished to use the summary judgment remedy sparingly "in the complex field of antitrust statutes * * *". Southern Blowpipe & Roofing Co. v. Chattanooga Gas Co., 6 Cir., 360 F.2d 79 at 81. There are several decisions however which hold that the court should not hesitate to grant a summary judgment in an antitrust case where the record is barren of any facts which would support the existence of a claim. Waldron as Executrix v. Cities Service Co., supra, Fiumara v. Texaco Inc., D.C., 204 F.Supp. 545, aff'd, 3 Cir., 310 F.2d 737; Gold Fuel Service Inc. v. Esso Standard Oil Co., D.C., 195 F.Supp. 85 at 92, aff'd, 3 Cir., 306 F.2d 61; Dale Hilton Inc. v. Triangle Publications, Inc., D.C., 27 F.R.D. 468. Amended rule 56(e) F.R.C.P. requires a full disclosure by the party opposing a motion for summary judgment of the specific facts which raise a triable issue. He can no longer rest on mere allegations or denials of his pleadings. Dressler v. MV Sandpiper, 2 Cir., 331 F.2d 130. It is also to be borne in mind that the Securities Exchange Act of 1934 (15 U.S.C. § 78a etc.) has for one of its purposes provision for the self-regulation of the business practices of stock exchanges and their members to the end that fair and honest markets are kept available to those engaged in the purchase or sale of securities. With the above general statements, we turn to the specific contentions involved in these motions.

The moving parties, although attacking the sufficiency of the complaint, appear to rely most heavily upon the other contentions advanced. It would seem however that in any event reference should be made to the sufficiency of the pleadings as the first step to the ultimate decision. Defendant's third contention will be first considered.

■ This court concludes that the complaint upon its face is sufficient. The contention that there is no allegation showing a public injury would seem to be answered by the decision in Syracuse Broadcasting Corp. v. Newhouse, 2 Cir., 295 F.2d 269 at 276. This is not to say however that the controversy is within the area of the antitrust laws invoked.

Defendants contend that even if they acted as alleged in the complaint, their conduct does not constitute a conspiracy within the contemplation of the antitrust laws. In effect this contention challenges the factual showing to support the allegations of the complaint when the provisions of the Securities Exchange Act are applied thereto. It would seem logical that this contention should be decided at this point as a part of the attack upon such pleading.

■■ It is beyond argument that the joint action of two or more persons in refusing to deal with another violates Section 1 of the Sherman Act. (See cases cited in Silver v. New York Stock Exchange, D.C., 196 F.Supp. 209 at 222). The difficulty here is that there is neither allegation nor evidence that the Exchange has in any way refused to deal with the plaintiff. It is uncontradicted that Cowen's registration with the Exchange has in any way been invalidated or that the Exchange has taken any affirmative action which would handicap the plaintiff in his business as a salesman of securities. In fact, the uncontradicted affidavit submitted by the Exchange denies any such action on its part. A recommendation or even a request to an employer, that an employee be discharged, is something less than a refusal to deal.

[8–10] There is no question but that the decision in Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389, relied upon by the plaintiff, holds that the Securities Exchange Act does not constitute a total exemption of its actions from the provisions of the antitrust laws. The facts however in the present case are so unlike the facts of the Silver case as to prompt this court to conclude that the self-regulation requirements of the above statute are not intended to be nullified by the good faith

action of the defendants in the matter of the discipline of those over whom control is exercised. There appears to be no dispute by the plaintiff but what in the transaction involved he acted as a broker for which he was not licensed; that he purchased securities in that capacity for less than the prevailing market price; that said securities were improperly transferred into his own name and were then offered for sale through a broker other than his employer—all of which is hardly compatible with equitable principles of trade and the insurance of a fair and honest market in securites transactions. If the good faith discipline of the plaintiff by the defendants under such circumstances is not exempted from the antitrust laws, then the power of self-regulation provided for by the Securities Exchange Act is of little value. No decided case is found or cited which may be considered as in point but the following quotation from Silver v. New York Stock Exchange, supra, at page 361, 83 S.Ct. at p. 1259, is applicable. " * * * it is also true that particular instances of exchange self-regulation which fall within the scope and purposes of the Securities Exchange Act may be regarded as justified in answer to the assertion of an antitrust claim".

Upon the argument and in the submitted brief, plaintiff appears to urge that as in Silver v. New York Stock Exchange, supra, his cause of action escapes condemnation because no opportunity was afforded the plaintiff by the Exchange to meet the charges in a hearing, the availability of which is provided by a rule of the Exchange. A short answer to this contention is that unlike, as in Silver, plaintiff has made no request for a hearing even up to this date, the Exchange has made no charges against the plaintiff and his registration stands unrevoked. Unlike Silver, there is no admission that any action affecting plaintiff has been taken. Rule 345 of the Exchange provides for a hearing only upon demand by the employee of a member within twenty days after a determination by the Exchange that such employee has violated his obligations. If plaintiff could assume from the hearsay statement of Eckert of March 21 or 22 that the request or order of the Exchange, relative to plaintiff's employment, be considered as a determination that plaintiff had violated his obligation, no request for a hearing was made. In fact, plaintiff took no action even to obtain information from the Exchange until his letter of June 1, 1961.

The above discussion leads to the conclusion that, in the absence of a showing of malice or bad faith, the allegations of the complaint and the factual circumstances before the court afford no basis for the invocation of the anti-trust law by the plaintiff. Here the regulation of plaintiff's conduct as a security salesman was contemplated, if not commanded, by the statute, the purpose of which would be nullified if the right of discipline is removed. Discipline involves restraint but this court sees no basis for a holding that the restraint imposed was unreasonable in the light of the purpose of the Securities Exchange Act.

Even if the provisions of the above statute be eliminated from consideration here, the rationale in Molinas v. National Basketball Assoc., D.C., 190 F.Supp. 241 and Deesen v. Professional Golfers' Assoc. of America, 9 Cir., 358 F.2d 165 would seem to be applicable. Plaintiff shows nothing more than the invocation of a disciplinary rule designed to preserve both confidence and integrity in the business in which defendants are engaged.

If this court is right in its conclusion, indicated above, then further discussion would be unnecessary but it is deemed advisable to refer briefly to the remaining contentions of the moving parties.

It appears to be beyond argument that plaintiff has no available evidence admissible upon the trial to show that a conspiracy or combination existed between the defendants as alleged in the complaint unless the evidence of Eckert, upon the arbitration proceeding to the effect he was advised by a representative of the Exchange that Mohawk would have

to release the plaintiff from its employ, is admissible upon the trial of this action. The plaintiff contends that such evidence is admissible under the provisions of New York C.P.L.R. 4517. The defendants urge that such evidence is inadmissible as evidence against the Exchange for the reason that it was not a party to the arbitration proceeding; made no appearance therein and no opportunity was afforded to cross-examine Eckert as to his pertinent testimony.

 There is no question that the statute, referred to above, and its predecessor section 348 of the New York Civil Practice Act, provides that the prior testimony of a deceased witness is only admissible in a subsequent action between the same parties or their representatives. Plaintiff appears to recognize the rather specific language of the above statute but seeks to avoid the literal application thereof by urging in a rather labored manner that Mohawk was in fact the agent of the Exchange in the arbitration proceeding and the Exchange is therefore in privity with Mohawk so that the statement by Eckert was in some way binding upon the Exchange. This argument is difficult to follow. Mohawk may have been a member of the Exchange but this does not create an agency in the matter of a dispute between Mohawk and one of its employees. An examination of cited cases, such as Fleury v. Edwards, 14 N.Y.2d 334, 251 N.Y.S.2d 647, 200 N.E.2d 550, appears to stress the right of cross-examination as a prerequisite to the admissibility of such testimony against a party to the prior proceedings in which the original testimony was given. This court can find no basis upon which it can be held that the Exchange was in any way obligated to appear at the arbitration proceeding to be represented by counsel thereat or even to request the right of cross-examination. Thus "* * * the prime and essential requirement * * *" for the use of Eckert's testimony against the Exchange is lacking here. Fleury v. Edwards, supra, at 339, 251 N.Y.S.2d 647, 200 N.E.2d

550. This court concludes that the testimony referred to would not be admissible against the Exchange upon the trial of this action and under the circumstances defendants' motions for a summary judgment should be granted. Dyer v. MacDougall, 2 Cir., 201 F.2d 265.

The final contention here may be stated as urging that the decision of the Arbitration Board, dismissing plaintiff's claims, is res judicata as to Mohawk and that plaintiff is thereby collaterally estopped from asserting the present claim against the defendant Exchange. Israel v. Wood Dolson Co., 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97. The general rule that a decision by arbitrators is binding and conclusive under the doctrine of res judicata is not seriously disputed. The plaintiff, however, seeks to escape the application of the above rule by urging that the present cause of action is not embraced in the claims submitted to arbitration.

This court has concluded that the decision of the motions should not rest upon a determination of the above contentions and no opinion is intended to be expressed upon the validity thereof. The record of the arbitration hearing is not before this court but it is fairly inferable that the present conspiracy charge was not litigated therein. The matter of plaintiff's discharge by Mohawk may well have been presented as a matter of contract or of equitable fairness. On the other hand, the matter of Mohawk's alleged action in blocking plaintiff's further employment as a salesman of securities would seem to have been litigated and plaintiff presents no evidence that the Exchange acted in any way to plaintiff's detriment in the matter of such employment. The situation may well be one where the present cause of action is partially but not entirely foreclosed by a full disclosure of the facts.

Defendants' motions for a summary judgment dismissing the complaint are granted for the reasons indicated above, and it is

So ordered.