**SYRACUSE BROADCASTING CORPORATION, Plaintiff-Appellant,**

v.

**Samuel I. NEWHOUSE, The Herald Company, The Post-Standard Company and Central New York Broadcasting Corporation, Defendants-Appellees.**

**No. 218, Docket 23851.**

United States Court of Appeals Second Circuit.

Argued Feb. 9, 1956.

Decided Aug. 31, 1956.

Smith & Sovik, Syracuse, N. Y. (Laurence Sovik, Syracuse, N. Y., and Arthur C. Kyle, Sr., Monticello, N. Y., of counsel), for plaintiff-appellant.

Bond, Schoeneck & King, Syracuse, N. Y. (Tracy H. Ferguson of Bond, Schoeneck & King, Syracuse, N. Y., and Charles Goldman of Goldman, Evans & Goldman, New York City, of counsel), for defendants-appellees.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

This is a suit for treble damages based on the Clayton Act, 15 U.S.C.A. § 15, for violation of 15 U.S.C.A. §§ 1 and 2 (Sherman Act) and §§ 13, 13a, 18 and 19. The district judge granted summary judgment for the defendants on one of plaintiff's claims and dismissed the others for failure to state a claim upon which the plaintiff was entitled to relief; and plaintiff appeals.

Plaintiff (WNDR) and one of the corporate defendants are radio broadcasting corporations. Both of the other corporate defendants publish newspapers, which together comprise the sole daily and Sunday newspapers in the City of Syracuse, New York. The defendant, Post-Standard Company is wholly owned by the defendant Herald Company, the majority interest in which, in turn, is owned by the individual defendant Samuel I. Newhouse, who also controls the defendant broadcasting company (WSYR and WSYR-TV). There are three other independently owned and operated radio broadcasting stations in Syracuse and one other television station.

This action is predicated on the following alleged violations of the antitrust laws: (1) Restraining trade in, monopolizing, and attempting to monopolize the dissemination of news and advertising in the Syracuse area in violation of 15 U.S.C.A. §§ 1 and 2 (Sherman Act) by means of the following acts: (a) refusing to accept newspaper advertisements unless WSYR also received advertising; (b) refusing to accept national or "general" advertising in either newspaper separately, but requiring unit or combination advertising in both newspapers; (c) circulating false statements concerning WNDR; and (d) providing advantages in the newspapers to WSYR which were not provided to WNDR, such as favorable publicity, free advertising, preferred page positions for advertising and secret refunds and rebates. (2) Discriminating in price, by means of the above-stated acts, in violation of 15 U.S.C.A. § 13 (Clayton Act). (3) Merging

and employing interlocking directorates in violation of 15 U.S.C.A. §§ 18 and 19 (Clayton Act). At the close of extensive pre-trial hearings and on the basis of a voluminous record, Judge Brennan granted summary judgment in favor of defendant on (1), the Sherman Act claims, and dismissed (2) and (3), the claims based on the Clayton Act, for failure to state a claim.

■ Judge Brennan brushed aside a further charge, made in the briefs and affidavits, but not alleged in the complaint or subsequent statement of claims, nor in any way substantiated, to the effect that defendants' newspapers charged plaintiff "a different rate for advertising than that charged other advertisers for the same class of advertising"; and we think he was justified in doing so. We do not, however, preclude plaintiff from applying for leave to amend the complaint in this respect, before the trial which we are about to order.

### Alleged Refusal of Defendants' Newspapers to Accept Advertisements Unless WSYR Also Was Patronized.

■ In an effort to bring itself within the doctrine of Lorain Journal Co. v. United States, 342 U.S. 143, 72 S. Ct. 181, 96 L.Ed. 162, plaintiff alleged that the defendants' newspapers refused to accept newspaper advertisements unless advertisements were also placed with WSYR. This was a serious charge. It was flatly denied by defendants, and Judge Brennan very properly, in the exercise of administrative powers which are indispensable to the efficient handling of antitrust cases and others, insisted that plaintiff produce some substantiation. When this was not forthcoming, plaintiff was ordered to "set forth specific instances and details" concerning this charge. Plaintiff merely produced a statement that an advertising man had said he had been told that defendants' newspapers would not accept advertising unless WSYR was also patronized. This evidence would not be admissible at a trial; and Judge Brennan correctly decided that as to this charge there was no genuine issue of fact. It is consequently out of the case.

### The Monopoly Charge Under Sherman Act, Section 2.

■ What would seem to be the heart of plaintiff's case is the assertion that as the defendants' two newspapers were the only newspapers in Syracuse, and, therefore, had monopoly power, the imposition of the unit or combination advertising arrangement was illegal *per se* under the reasoning of Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 608–609, 73 S.Ct. 872, 97 L.Ed. 1277. But ordinarily morning and evening newspapers are not separate products which can be viewed as tied to one another. Times-Picayune Pub. Co. v. United States, supra, 345 U. S. at page 614, 73 S.Ct. at page 883. Accordingly, "neither the rationale nor the doctrines evolved by the 'tying' cases can dispose of the [case]" and it "must thus be tested under the Sherman Act's general prohibition on unreasonable restraints of trade." Ibid., 345 U.S. at page 614, 73 S.Ct. at page 883.

While plaintiff's argument is obscure, the meat of it seems to be that but for the newspapers' unit advertising contract, persons advertising their products in the Syracuse area would devote more of their advertising funds to plaintiff's competing medium, that the combination rate is a monopoly rate because defendants own and control the only newspapers in Syracuse, and that a combination advertising rate by newspapers can conceivably be an attempt to monopolize the combined newspaper-radio advertising market in and around Syracuse.

■ We need not now decide whether newspaper advertising and radio advertising are competing products in the same market, as plaintiff's charge on the monopoly phase of the case falls of its own weight, even if it be assumed *arguendo* that they do compete in the same market. The record discloses undisputed

evidence of the total radio-newspaper coverage, two newspapers and five radio stations in Syracuse, and defendants' share of the total advertising revenue is too low to warrant any inference of monopolization by defendants or any attempt to monopolize.

■ Plaintiff's theory is that its radio station competes in the Syracuse area for the same advertising dollar as do defendants' radio station and newspapers, along with the other three radio stations. Thus plaintiff has defined the "relevant market" in a fashion which destroys its claim of monopoly under Section 2. This is a legal question which we may determine on the basis of the record before us. Times-Picayune Pub. Co. v. United States, supra; United States v. E. I. Dupont de Nemours & Co., 351 U.S. 979, 76 S.Ct. 1043.

### Unreasonable Restraint of Trade Under Sherman Act, Section 1.

But this reasoning does not dispose of plaintiff's claim that defendants have conspired to violate the prohibition against unreasonable restraints of trade by the newspapers' unit advertising arrangement and the alleged concert of action by defendants in circulating false rumors about plaintiff, refusing to publish any praiseworthy items about WNDR, and giving discriminatory advantages to WSYR, all for the alleged purpose of putting plaintiff out of business and removing it from the scene as a competitor. Nor does the Times-Picayune case foreclose this issue, as the court was careful to point out that "We do not determine that unit advertising arrangements are lawful in other circumstances or in other proceedings." 345 U.S. at page 627, 73 S.Ct. at page 890. Moreover, the court's decision that the Times-Picayune arrangement was lawful stressed the fact that "competitive business considerations * * * actuated the adoption of the unit rate", that the Government did not prove an intent to restrain trade, and that the com-

petitor newspaper was not shown to have been harmed by the arrangement. 345 U.S. at pages 614–627, 73 S.Ct. at page 888.

■ The record before us here is far too confused and cumbersome to warrant an affirmance of the summary judgment granted on this phase of the case. It may well be that the state of the evidence on the trial at the conclusion of plaintiff's case will warrant the direction of a verdict in defendants' favor. There are some indications that no substance will be found in the charge relative to the rumors, and plaintiff may not be able to prove that, were it not for the existence of the unit arrangement, persons advertising their products in the Syracuse area would devote more of their advertising funds to plaintiff's competing medium. The conclusion by Judge Brennan that any harm to plaintiff was "indirect, incidental and insufficient" may well be justified after the proofs are in, but on the briefs submitted to us and the 6000 pages of typewritten and undigested and unindexed depositions and pre-trial proceedings, we think the interests of justice require a trial of this particular narrow issue, that is to say the charge of conspiracy to restrain trade to plaintiff's damage by the use of the unit rate for advertising in the two newspapers, the circulation of false rumors about plaintiff, the refusal to publish in the newspapers items favorable to the plaintiff, and the giving of discriminatory advantages to WSYR.

Nor do we reach the interesting question, as to which the cases appear to be in conflict, of whether the circulation of false rumors to put a competitor out of business taken in isolation constitutes a violation of the antitrust laws or no more than a trade libel. Caldwell-Clements, Inc. v. Cowan Pub. Corp., D.C.S.D.N.Y., 130 F.Supp. 236; contra, Swartz v. Forward Ass'n, D.C.D.Mass., 41 F.Supp. 294. See Grismore, Are Unfair Methods of Competition Actionable at the Suit of a Competitor, 33 Mich. Law Rev. 321.

### The Clayton Act Charges.

Judge Brennan dismissed the charge under 15 U.S.C.A. § 13 as failing to state a cause of action. This was apparently on the ground that there was no allegation of a combination or conspiracy to violate § 13. We think this disposition erroneous: a conspiracy is not a necessary element of a violation of § 13. The correctness of the dismissal of this cause of action raises, however, important and apparently unresolved questions under the Clayton Act. Thus the Supreme Court reserved in the Times-Picayune case the question whether advertising space is a "commodity" within the meaning of Section 2 of the Act. See 345 U. S. at page 610, note 27, 73 S.Ct. at page 881, and cases cited. And there is also a question whether a price or service discriminatorily offered to a commonly-held corporation violates the Act. Cf. Timken Roller Bearing Co. v. United States, 341 U.S. 593, 598, 71 S.Ct. 971, 95 L.Ed. 1199; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 215, 71 S.Ct. 259, 95 L.Ed. 219; United States v. Yellow Cab Co., 332 U.S. 218, 227, 67 S.Ct. 1560, 91 L.Ed. 2010. We think it unnecessary and inappropriate to resolve these questions on the basis of the record now before us. Any evidence which would be relevant to show a violation of 15 U.S.C.A. § 13 would also be relevant to the Sherman Act charge which we are remanding for trial. It may well be that the trial will demonstrate that there is little or no evidentiary basis for this alleged § 13 violation. In any event the record after trial will give us a better basis for resolving these important issues than the confusing and wholly unorganized mass of affidavits and depositions now before us. Under these circumstances we think it appropriate to permit the plaintiff to go to trial on the count which he has asserted under 15 U.S.C.A. § 13.

There is no substance to the charges under 15 U.S.C.A. §§ 18 and 19. These were properly dismissed.

The order is modified and the case remanded for trial in accordance with this opinion; otherwise, affirmed.