SYRACUSE BROADCASTING CORPORATION, Plaintiff-Appellant,

v.

Samuel I. NEWHOUSE, The Herald Company, The Post-Standard Company, and Central New York Broadcasting Corporation, Defendants-Appellees.

No. 370, Docket 26775.

United States Court of Appeals
Second Circuit.

Argued May 2, 1961.

Decided Oct. 4, 1961.

Joseph W. Burns, New York City (Austin, Burns, Appell & Smith, New York City; John P. Cuddahy, New York City, of counsel, on the brief; Laurence Sovik, Martin F. Kendrick, Syracuse, N. Y., of counsel, Smith & Sovik, Syracuse, N. Y.), for plaintiff-appellant.

Tracy H. Ferguson, Syracuse, N. Y. Gerald H. Weinstein, Syracuse, N. Y., of counsel; Bond, Schoeneck & King, Syracuse, N. Y., on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, MOORE, Circuit Judge, and STEEL,* District Judge.

LEONARD P. MOORE, Circuit Judge.

In November 1952 plaintiff brought this action for treble damages based on various provisions of the Sherman and Clayton Acts. After two appeals to this court (1956, 236 F.2d 522; 1959, 271 F.2d 910), the dismissal of another appeal for lack of jurisdiction (June 3, 1957), a denial of a motion to this court for clarification (September 21, 1960), the denial of a motion in the nature of a writ of mandamus (October 6, 1960), and the compilation of a more than 7,000 page pre-trial record, the case finally went to trial on November 28, 1960. Plaintiff called one witness and then rested. Defendants' motion for a dismissal was granted, and from the judgment entered thereon, plaintiff appeals.

Plaintiff Syracuse Broadcasting Corporation (WNDR) and defendant Central New York Broadcasting Corporation (WSYR) are radio broadcasting corporations located in Syracuse, New York. The other two corporate defendants publish the sole daily and Sunday newspapers in that city. "The defendant Post-Standard Company is wholly owned by the defendant Herald Company, the majority interest in which, in turn, is owned by the individual defendant Samuel I. Newhouse, who also controls the defendant broadcasting company (WSYR and WSYR-TV)" (236 F.2d at page 524).

Thus, after almost nine years of bickering over pre-trial procedures, no real trial has as yet been held. An appellate court cannot act and should not have to act as a pre-trial court. Nor is it its function to draft a blueprint for the trial showing in detail each relevant evidentiary item and the proper or most strategic order of proof. On the two previous appeals an attempt was made by this court (apparently unsuccessfully) to point out the issues which, if there were any supporting proof, might be litigated. Thus on the first appeal the court, on a record "far too confused and cumbersome to warrant an affirmance of the summary judgment [dismissing plaintiff's Sherman Act claim]" and with misgivings as to whether there was any substance to plaintiff's charges relative to the spreading of false rumors by defendants concerning plaintiff, nevertheless, thought that "the interests of justice require a trial of this particular narrow issue, that is to say the charge of conspiracy to restrain trade to plaintiff's damage by the use of the unit rate for advertising in the two newspapers, the circulation of false rumors about plaintiff, the refusal to publish in the newspapers items favorable to the plaintiff, and the giving of discriminatory advantages to WSYR" (236 F.2d 522, 526). Dismissal of the charge under the Clayton Act (15 U.S.C.A. § 13) for failure to state a cause of action was reversed because "a conspiracy is not a necessary element of a violation of § 13" (at page 527). The court hoped (again in vain) that "the record after trial will give us a better basis for resolving these important issues than the confusing and wholly unorganized mass of affidavits and depositions now before us" (at page 527). So wrote the court in August 1956.

In November 1956 defendants moved for a pre-trial order for further information which resulted in a pre-trial order dated February 12, 1957. Thereafter plaintiff submitted a most comprehensive (29 printed pages) compliance memorandum (April 3, 1957) setting forth names of persons involved, dates, places, subject matter of conversations and letters and other exhibits. Illustrative are a list of 32 itemized paragraphs stating acts committed in furtherance of defendants' wrongful concert of action and a list of

* United States District Judge from the Third Circuit, Wilmington, Delaware, sitting by designation.

21 instances of business lost because of the circulation of allegedly false rumors.

On July 27, 1957 the trial court entered a preclusion order which came to this court for review by virtue of an appeal from an order in January 1958 dismissing the complaint. In the opinion on that appeal the court commented upon its previous decision and its conception of the scope of the remaining issues saying that "plaintiff was not entitled to go to trial on its monopoly charge under Section 2 of the Sherman Act, 15 U.S.C.A. § 2, its complaint of mergers, and interlocking directorates in violation of the Clayton Act, 15 U.S.C.A. §§ 18 and 19, in its allegation that defendant newspapers refused to accept advertising unless WSYR was also patronized" (271 F.2d 910 913). The dismissal of the action was reversed and the preclusion order considered at some length in the opinion (pp. 915–917).

Under "Volume of Interstate Commerce" Items I(e) and (g) the court suggested irrelevance of (e) and preclusion of (g) "the extent of plaintiff's participation in this commerce." However, the privilege was given to plaintiff of "at any time introducing whatever evidence might become available to it on this point [(e)]."

Item III(a) related to "Circulation of false statements among plaintiff's advertisers." This court's direction was clear enough—evidence as to statements in newspaper articles was not precluded; oral rumors (statements) were precluded.

Item IV(b) dealt with "Refusal to publish news items favorable to plaintiff." The news items listed in Exhibits N, I and K were not precluded; those in Exhibit R were precluded.

Items V(b) (c) (d) and (e) related to "Discriminatory advantages given WSYR." All evidence was precluded except "the issues of free advertising," "preferred page position" and "secret rebates."

Item VI(a) "Price discrimination." This court held that plaintiff could not object to the preclusion of evidence of price discrimination except as it "relates to the free advertising alleged to have been given WSYR by the two defendant newspapers" (271 F.2d 910, 917).

The dismissal was reversed and "the case remanded for further proceedings not inconsistent with this opinion." Upon his own initiative, the trial judge prepared a "status memorandum" (December 7, 1959) in which was incorporated the judge's conception of the effect on the trial of this court's decision. A further pre-trial hearing was held on March 14, 1960 and a second conference scheduled for June 29, 1960. On June 27, 1960 plaintiff filed an affidavit of bias and prejudice against the trial judge. The affidavit was held to be insufficient. Further pre-trial hearings were conducted on June 30, August 3, September 13, September 20, and October 25, 1960. Pre-trial orders were made on July 19, August 5, August 19, September 26, October 28, and November 18. Plaintiff made adequate compliance thus disclosing that it believed that it had a mass of evidence in its possession, under its control or available by subpoena in substantiation of its case.

Finally on November 28, 1960, almost on the anniversary of the filing of the complaint eight years previously, a jury was impanelled. Plaintiff's proposed proof in great detail (ten printed pages of the record) was set before the jury during plaintiff's opening statement. However, after calling one witness who testified briefly, plaintiff claimed that because of the preclusion of certain evidentiary items that it could not proceed. The trial judge had no other alternative than to grant defendant's motion to dismiss the complaint. Thus for the third time under the guise of an appeal from a dismissal, this court has to review the propriety of pre-trial preclusionary orders which are non-appealable before final judgment.

On this appeal plaintiff contends that its inability to proceed further when on trial resulted from two pre-trial orders issued by the trial judge on August 19

and September 26, 1960. The August 19 order provides that:

"Newspaper articles, advertisement, statements or publicity which plaintiff will offer as part of its affirmative case will be prepared as separate exhibits identified by the date, page and column of the newspaper in which it is published. The same shall be listed in the order in which they will be offered and copies of said list and of the exhibits shall be delivered to defendants' counsel on or before September 8, 1960."

When plaintiff failed to comply with this order, the judge below, on September 26, 1960, ordered "that plaintiff is precluded from offering or introducing into evidence any newspaper articles, advertisements, statement or publicity, * * *"

According to plaintiff, the crux of its case is contained in issues of defendants' newspapers published between November 1947 and May 1953, a total of over 3,500 publications. These newspapers—presently available either in their original form or on microfilm—plaintiff claims will form part of its proof that defendant newspapers authorized WSYR to furnish its advertisers free newspaper advertising and publicity as an inducement to advertise over WSYR, that defendant newspapers gave free advertising to WSYR, and that they gave disproportionately favorable publicity to WSYR and unfavorable publicity to WNDR. Plaintiff also claims that the August 19 order, in effect, prevented it from going to trial since it imposed the impossible burden of making copies of all articles to be introduced as exhibits.

■ Insofar as they forced plaintiff to make and submit copies of each article (already in defendants' possession or available to them) these orders were erroneous. The requirement that each article be prepared as a separate exhibit would, in addition to the prohibitive cost involved, detract from the evidentiary value of these actions. The allegation that more favorable publicity in news articles was given to WSYR than to WNDR could be proved only by introducing newspapers, and the page location of the articles and their prominence on a particular page might well be relevant to this allegation. Also, requiring plaintiff to furnish a copy of each exhibit to defendants was unnecessary and prohibitively expensive and burdensome. Although the exchange of exhibits before trial is desirable in many situations, there is no need for such a practice when the opposing party already has a copy of the exhibit. The articles and advertisements which plaintiff sought to introduce are all found in newspapers published by defendants which have either original issues or microfilm reproductions thereof in their possession. The most that should thus be required of plaintiff is that it supply defendants with information sufficient to locate in the newspapers the items to be introduced. Plaintiff's detailed compliance document of April 3, 1957, appears to satisfy this requirement.

■ Nor was the trial judge correct in refusing to allow plaintiff to exhibit through a "Recordak" viewer (or any similar apparatus) newspaper items recorded on microfilm. See 28 U.S.C. § 1732 which authorize the introduction of microfilm evidence. The original copies of these newspapers were not available, and plaintiff's only choice was to use a viewer or go through the expensive procedure of making typewritten or photostatic copies. Any inconvenience that might result from using a "Recordak" or other machine at trial would not justify imposing this burden on plaintiff.[1] The trial judge's refusal appears to be partially based on his opinion that this court would not accept microfilm in the record

---

1. It is arguable that examining an exhibit through a viewer would be more satisfactory than reading a typewritten exhibit. The viewer magnifies the page to about 1½ times the size of the newspaper and thus the exhibit can be seen by more than one juror at a time. It also gives a more accurate impression of the particular item in question and its relative appearance on the printed page.

on appeal. The motives of the trial judge are readily understandable and appreciated. However, in this machine age when civilization itself is on the verge of being buried under a mass of records, documents and files, courts, both trial and appellate, will have to adapt themselves to the use of such mechanical devices as are being created to avoid this peril. Legislatures in increasing number are authorizing the use of photocopies. Under these circumstances the courts should be able to formulate procedures for preserving the trial record far more easily, in fact, than presenting to an appellate court the tonal quality of a trial judge's comments or his facial expressions.

Nothing said so far should be construed as approving plaintiff's expressed intention of parading literally thousands of newspaper items before a jury, for example: "The newspaper will tell the story and we propose to put every one of these newspapers in evidence * * * Every single one of them, three thousand of them * * * There is no other way to prove the case." The trial judge's efforts to keep the number of exhibits within manageable proportions were most commendable. Although there may be many permissible devices for accomplishing this most desirable result, making it financially burdensome for a party to introduce its bulk evidence is not one of them.

■■ Perhaps with a little more cooperation between counsel at the pre-trial stage, substantial agreement could be reached on many aspects of this case, thereby shortening the eventual trial. There is no good reason why plaintiff should have to introduce 1,251,263 lines of advertising in order to prove that this advertising was received without charge by WSYR, or to introduce 11,997 advertisements which were allegedly freely given to WSYR advertisers. Irrespective of the problems involved in proving that these were received without charge, it should not be difficult to reach agreement before trial as to whether these advertisements actually did or did not appear in defendants' newspapers. The admission

procedure provided by Rule 36, Federal Rules of Civil Procedure, 28 U.S.C.A., would seem ideal for eliminating this peripheral although essential fact, and with its elimination there would be no necessity to introduce newspapers as to this aspect of the case, except possibly as samples, which the parties agree upon or the judge determines to be illustrative of certain categories of the mass of advertising material. Other elements of plaintiff's case seem susceptible to similar treatment. For example, plaintiff's April 3, 1957 compliance document compares the number of WSYR and WNDR programs selected by defendant newspapers for their "Highlights" and "Feature Listing" columns, and plaintiff apparently intends to prove this comparison by introducing 8,792 newspaper items. With more cooperation between counsel and trial judge some pre-trial agreement on this comparison should be reached, thereby eliminating the necessity of introducing all but perhaps representative samples of these items. In fact it is entirely possible that a large proportion of the newspapers relied upon by plaintiff need never be introduced at trial. Of course, it is not this court's function to dictate a particular pre-trial technique for each aspect of this or any other case, and "we realize that to make pre-trial procedure effective appellate interference with trial court discretion must be kept to a minimum." Padovani v. Bruchhausen, 2 Cir., 1961, 293 F.2d 546, at page 550. We merely suggest, however, "that with a new start and a fresh determination to co-operate, the parties and the court may well achieve wonders in this very case." Padovani, supra.

Although the order directing plaintiff to make and deliver copies of exhibits was erroneous, this does not end the matter. Plaintiff did not make even a perfunctory attempt to establish its case at trial. Plaintiff's counsel opened to the jury, laying before them his treasure chest overflowing with items of proof. Confidently, he spoke of combined advertising rates, unit rates, an agreement for free advertising, bookkeeping balances,

stockholder identity between defendants, refusal to publish news items, and trade discrimination. He was on the verge of proceeding for "several days in introducing preliminary evidence"—preliminary to proof "through individuals, the names of whom have already been revealed to the court and the defendants, station managers, former station managers, documents, letters, media records, trade journal advertisements * * * "

When counsel opened his box of proof, if there ever had been contents, they vanished, leaving him unlike Pandora even without Hope. He called one witness who told of submitting a news story to the Herald Journal and was informed that if he were an advertiser his story would have received greater consideration. At this point instead of offering any proof whatsoever on the essential elements of his affirmative case or even making an offer of proof, counsel chose to claim helplessness to proceed further because of the order precluding the introduction of newspapers. With no effort or apparent intention to adapt himself to the situation or introduce proof in the many other fields he had outlined in his opening, counsel took the position that if he could not proceed with newspapers and microfilms he would "introduce no further evidence in behalf of the plaintiff." Clearly a litigant should not be permitted to throw up his hands in despair and refuse to proceed merely because a trial judge sustains an objection to the admission of some of his evidence. At the other extreme, it would be unrealistic, at least in some situations, to require a plaintiff to proceed with its proof after an evidentiary ruling of such dimensions that the material elements of the case could not possibly be proven. The record here reveals that the preclusion order, though eliminating much of plaintiff's case as reflected in newspaper articles, would not have interfered with proof as to factual allegations which it is claimed make out a conspiracy in restraint of trade. Plaintiff should have proceeded to prove these allegations if it were able to do so. However, to hold that plaintiff is to be precluded on any new trial from offering proof which could have been offered on the November 1960 trial within the limitations of this court's previous opinions, would be tantamount to denying plaintiff an opportunity of proving even the allegations left open to it. Therefore, again and only because "the interests of justice require a trial of this particular narrow issue," namely, "the charge of conspiracy" (236 F.2d 522, 526) is plaintiff permitted to offer such proof as it may have relating to these allegations in connection with proof of other phases of its case.

Because the case must be remanded for a new trial, a few problems appearing in the record which are bound to arise again should be mentioned:

(1) *Circulation of false rumors:* Clearly plaintiff is entitled to introduce allegedly false articles in defendants' newspapers casting doubt upon plaintiff's ability to remain in business. Despite plaintiff's protestations to the contrary, nothing in the record indicates that the trial judge would have excluded these items but for plaintiff's failure to prepare them as exhibits pursuant to the August 19, 1960 order. If such articles be proven to have been false and published for the purpose of damaging plaintiff, their reception in evidence will depend upon the establishment of a proper foundation for their admission upon the trial. As to evidence concerning similar rumors spread orally by defendants' employees, this court's prior opinion (271 F.2d 910) affirmed the trial judge's conclusion that such evidence was to be excluded except as to Item 1, Exhibit M. It should be noted that the only items of Exhibit M (containing 21 items) which were excluded were the oral rumors. In its order of preclusion (July 27, 1957), the trial judge said that "the defendant would be entitled to know with a degree of certainty the name of the person who it is claimed circulated the false rumor and the name of the person to whom it was circulated." This requirement was not unfair. One of the objectives of pretrial procedures is to enable all parties

276

to prepare in advance and to reduce to a minimum the number of instances where claims are made of conversations with persons whose names were undisclosed until testimony as to such conversations is given upon the trial. However, the trial judge in the first instance must be the arbiter as to the competency and relevance of the testimony to be received. Because of the passage of over four years since the order of July 27, 1957, if upon the trial the trial judge guided by that order believes that plaintiff has reasonably complied with Item III(a) as to any item listed in Exhibit M adequately in advance of the trial to enable defendants to investigate the facts, the order of July 27, 1957, shall not be considered a bar to the admission of such evidence.

■ Although this court's opinion (271 F.2d 910) did not specifically deal with the point, it did not exclude admission in evidence of statements concerning incidents where negotiations between WNDR and potential advertisers were broken off after the advertisers had read allegedly false articles about plaintiff in defendants' newspapers. These statements, though hearsay, would be admissible to show the state of mind of the advertisers. See American Cooperative Serum Ass'n v. Anchor Serum Co., 7 Cir., 1946, 153 F.2d 907, certiorari denied, 329 U.S. 721, 67 S.Ct. 57, 91 L.Ed. 625; Greater New York Live Poultry Chamber of Commerce v. United States, 2 Cir., 1931, 47 F.2d 156, certiorari denied 283 U.S. 837, 51 S.Ct. 486, 75 L.Ed. 1448.

■ (2) *Evidence of value and extent of interstate commerce of the products involved in the applicable geographic market:* On the last appeal to this court it was held that "it was error at this stage of pre-trial examination to preclude plaintiff * * * from at any time introducing whatever evidence might become available to it" relevant to the total amount of commerce involved in the applicable geographic area (271 F.2d at page 916). On July 20, 1960, however, the trial judge ruled that this evidence would be precluded. When the case came to trial, however, the court, despite this

order, deferred ruling as to the admissibility of proof on this issue. Such a ruling was most reasonable. To satisfy the interstate commerce requirement of § 1 of the Sherman Act, plaintiff need only show that the amount of commerce affected by the alleged restraint was not "insignificant or insubstantial." International Salt Co. v. United States, 1947, 332 U.S. 392, 68 S.Ct. 12, 15, 92 L.Ed. 120. Once this is shown the actual amount of commerce in the relevant market is irrelevant at least as to this aspect of the case. E.g., Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 609, 73 S.Ct. 872, 97 L.Ed. 1277, and cases cited therein. On the other hand, it would be difficult to predict at this stage of the proceedings whether the amount of commerce involved in the relevant market and defendants' market position therein would necessarily be irrelevant in determining whether defendants' acts constituted a prohibited restraint of trade. The prudent course, as suggested by the judge below, would be to defer ruling on the admissibility of this evidence until plaintiff has produced its proof as to the conspiracy in restraint of trade.

■ (3) *Proof of public injury:* Throughout the pre-trial stage of this case the judge below indicated his belief that plaintiff, in order to make out the Sherman Act claim, must allege and prove that the alleged conspiracy was injurious to the public. In recent years a number of courts have held that a plaintiff in a Sherman Act treble damage action must allege and prove public injury as a separate element, i. e., that the price, quality or quantity of goods offered to the public was affected by the alleged conspiracy. See, e. g., Shotkin v. General Electric Co., 10 Cir., 1948, 171 F.2d 236. However, in Klor's Inc. v. Broadway Hale Stores, Inc., 1959, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741, the Supreme Court held that at least as to those "classes of restraints which from their 'nature or character' [are] unduly restrictive and hence forbidden by both the common law and the statute. * * * Congress [has] determined its own cri-

teria of public harm and it [is] not for the courts to decide whether in an individual case injury [has] actually occurred." Id., 359 U.S. at page 211, 79 S.Ct. at page 709.

This, in brief, was the state of the law at the time of the proceedings below. But in January 1961, the Supreme Court decided Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 1961, 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358, where again the court was faced with this issue. Although holding that the particular restraint involved fell within the Klor exception, the court further held that "to state a claim upon which relief can be granted under that section [Section 1], allegations adequate to show a violation and, in a private treble damage action, that plaintiff was damaged thereby are all the law requires." Id. 364 U.S. at page 660, 81 S.Ct. at page 367. This language would appear to eliminate public injury as a separate element in a Section 1 case.

Finally, a few comments concerning such trial as may take place as a result of the remand. Although it may be desirable to give counsel rather broad privileges in the presentation of the case it has been recognized that in an antitrust case it frequently is not practical "to let counsel try the case as they please" (13 F.R.D. 41, 66). Attention must be given to the establishment, if possible, of the essential allegations. Merely because the pattern of antitrust litigation seems to have stressed volume or quantity rather than quality is no reason to disregard applicable rules relating to cumulative and repetitious evidence. Proof directed towards damages might well be subordinated to proof of liability. The evidence cannot all be introduced simultaneously—undoubtedly some evidence will have to be taken subject to connection with other witnesses or other documents. However, the trial judge is entitled to be satisfied as to its relevance and upon representations by counsel made at least with an honest belief and hope of fulfillment. If certain evidence is excluded by the trial judge either because it is barred by pre-

clusion orders or by relevance to the remaining issues, offers of proof should be made if deemed necessary for the record. In final analysis the trial judge has full powers to control the trial, keep the record within manageable portions and within the issues. If further pretrial should, in the opinion of the trial judge, be necessary, of course in his discretion he may direct that such proceedings be held. So much time has been spent on pre-trial maneuvers that it might be wiser to concentrate during the second decade of this case upon the actual trial itself.

Reversed and remanded for a new trial