510 F.Supp. 741 (1981)
BALOGH'S OF CORAL GABLES, INC., et al., Plaintiffs,
v.
Irving GETZ et al., Defendants.
No. 79-3765-CIV-JAG.
United States District Court, S. D. Florida, N. D.
March 19, 1981.
*742 Michael S. Olin of Podhurst, Orseck & Parks, Miami, Fla., for plaintiffs.
Sanford L. Bohrer of Paul & Thomson, Miami, Fla., Donald J. Williamson, of Gibney, Anthony & Flaherty, New York City, for Rolex.
David L. Ross of Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, Miami, Fla., for Mayors.

ORDER
GONZALEZ, District Judge.
THIS CAUSE came on to be heard upon the Motion to Dismiss or in the Alternative for Summary Judgment of defendants, Rolex Watch U.S.A., Inc. (Rolex), and Montres Rolex, S.A. (Montres Rolex); and the Motion to Dismiss or in the Alternative for More Definite Statement of Irving Getz and Mayor's Jeweler's Inc. (Mayor's).[1]
*743 This is an action by four retail jewelers operating under the common name Balogh's, against a manufacturer of watches and chronometers, (Montres Rolex), its exclusive distributor in the United States (Rolex); and a competing retailer (Mayor's) and its president and principal operating officer (Getz).
The gravamen of the complaint is that Balogh's has repeatedly attempted to purchase merchandise from Rolex, but has always been refused. Balogh's alleges that
the refusal of Rolex to deal with plaintiffs is based on an unlawful combination and conspiracy in restraint of interstate and intrastate trade and commerce, arising out of an agreement between defendants Mayor's ... (Montres Rolex) and Rolex that Mayor's shall act as a principal outlet of Rolex in Dade and Broward County, Florida. Such agreement specifically requires the exclusion of plaintiffs, and is contingent upon Rolex's refusal to deal with plaintiffs. Complaint ¶ 15.
It is further alleged, inter alia, that although Rolex "opened" new distribution outlets in South Florida they are not principal competitors of Mayor's as are plaintiffs. The alleged conspiracy seeks to exclude only Balogh's from the market. There is no allegation that these new outlets are part of any agreement to exclude Balogh's.
Baloghs' complaint is in four counts. Count I alleges that the defendants violated the Sherman Act, 15 U.S.C. §§ 1-7; Count II alleges violations of the Clayton Act, 15 U.S.C. §§ 12-27; Count III is a pendent state claim under the Florida Deceptive and Unfair Trade Practices Act, Fla.Stat. § 501.201 et seq.; and Count IV is a pendent claim for "common law unfair trade practices."
The respective defendants assert different grounds as the bases for their respective motions and, accordingly, each will be discussed separately.

Rolex Defendants' Motion to Dismiss or in the Alternative for Summary Judgment
Montres Rolex raises the preliminary issue of the court's personal jurisdiction over this foreign corporation. Montres Rolex is a Swiss corporation and manufactures watches and chronometers under the trade name "Rolex". These products are then sold to Rolex Watch U.S.A., the exclusive "Rolex" distributor in the United States.
Montres Rolex' response to Baloghs' first set of interrogatories establishes the following: Montres Rolex has never qualified to do business in the State of Florida; it does not solicit any business in the forum state; and none of its employees have performed any services in Florida.
It is clear that Montres Rolex "has not engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 577-78, 62 L.Ed.2d 516 (1980). See Kulko v. California Superior Court, 436 U.S. 84, 93-94, 98 S.Ct. 1690, 1697-98, 56 L.Ed.2d 132 (1978); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1952). Indeed, the exercise of personal jurisdiction by this court would "offend `traditional notions of fair play and substantial justice'." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).
The court accordingly will grant Montres Rolex' Motion for Summary Judgment.
Rolex moves to dismiss Count I, the Sherman Act claim. Although the complaint fails to specify which section of the Act has been violated, it is abundantly clear that this is an alleged violation of section 1.
Every contract, combination ... or conspiracy, in restraint of trade or commerce *744 among the several States ... is declared to be illegal.
Rolex submits that this is simply a case of an exclusive distributor exercising its unilateral right to refuse to deal with a particular retailer and hence the complaint fails to allege any violation of the Act.
The starting point of any discussion of a refusal to deal is the seminal case of United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). There the Court articulated what is known as the Colgate doctrine:
The purpose of the Sherman Act is to prohibit monopolies, contracts and combinations which probably would unduly interfere with the free exercise of their rights by those engaged, or who wish to engage, in trade and commercein a word to preserve the right of freedom of trade. In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell. Id. at 307, 39 S.Ct. at 468.
In recent years the Colgate doctrine's protection has been narrowed. See, e. g., Continental T.V., Inc. v. GTE Sylvania, 433 U.S. 36, 67-68, 97 S.Ct. 2549, 2566-67, 58 L.Ed.2d 568 (White, J., concurring) (1977); FTC v. Texaco, Inc., 393 U.S. 223, 89 S.Ct. 429, 21 L.Ed.2d 394 (1968); United States v. General Motors Corp., 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). Today, the unilateral right to determine with whom one will transact business, is limited to the "mere announcement of ... policy and the simple refusal to deal." Parke Davis, 362 U.S. at 44, 80 S.Ct. at 511.
Rolex contends that the Colgate doctrine is dispositive and for further support, directs the court's attention to Aladdin Oil Co. v. Texaco, Inc., 603 F.2d 1107 (5th Cir. 1979) where the court held that the assignment of a purchase option and the refusal to grant a distributorship to plaintiff, a competitor of the assignee, were unilateral decisions protected by the Colgate doctrine.
The court, however, specified that the antitrust laws did not provide sellers with an absolute right of selectiona refusal to deal continues to be unlawful if it produces an unreasonable restraint of trade. 603 F.2d at 1115.
Balogh's does not rest its complaint on joint conduct consisting of a solicitation by a competitor and an agreement to transfer business from the plaintiffs to its competitor as in Aladdin Oil. Rather Balogh's alleges that its competitor and an exclusive distributor entered into an agreement whereby the competitor would act as the principal outlet for the distributorthe agreement being contingent upon the continued exclusion of Balogh's from the market. See Complaint ¶ 15.
These allegations of an agreement to exclude go well beyond the unilateral right to refuse to deal recognized by Colgate. As recognized by Parke Davis, 362 U.S. at 44, 80 S.Ct. at 511, that right is limited to "the mere announcement of ... policy and the simple refusal to deal."
It should also be noted that the decision in Aladdin Oil was based on a complete record, not simply the allegations of the complaint. Thus, Aladdin Oil's allegations of suppression of intrabrand competition and retail price maintenance, either of which would constitute unreasonable restraints of trade, were factually found to be no more than speculation unsupported by the record. Whether Baloghs' allegations are fanciful is a factual question which remains to be answered pending the development of a factual record.
The court finds that application of the Colgate doctrine to the allegations of plaintiff's complaint does not require its dismissal as a matter of law.

Mayors' Motion to Dismiss or in the Alternative for More Definite Statement
Mayor's contends that Balogh's has erroneously based Count I of its complaint on a *745 theory of a per se violation of section 1 of the Sherman Act. Mayor's argues that the complaint in fact alleges a vertical restraint of trade which is measured by the rule of reason, not the per se approach and that, as such, it fails to allege all of the elements of a rule of reason case. See Heart Disease Research Foundation v. General Motors Corp., 463 F.2d 98, 100 (2d Cir. 1972).
In addressing the question of whether Count I should be dismissed for failure to state a section 1 violation, one must distinguish violations falling within the rule of reason from those within the per se category.
In Northern Pacific Railway Company v. United States, 356 U.S. 1, 4, 78 S.Ct. 514, 517, 2 L.Ed.2d 545 (1956) the Court stated the purposes of the antitrust laws to be as follows:
The Sherman Act was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conducive to the preservation of our democratic political and social institutions.
It has been recognized that to effectuate these purposes section 1 of the Sherman Act should be read to prohibit only those combinations that "unduly" or "unreasonably" restrain competition. Northern Pacific Railway Company, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545; Chicago Board of Trade v. United States, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918); Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 35 L.Ed. 619 (1911). Justice Brandeis articulated the parameters of section 1 as follows:
[e]very agreement concerning trade, every regulation of trade, restrains. To bind, to restrain, is of their very essence. The true test of legality is whether the restraint imposed is such as merely regulates and perhaps promotes competition, or whether it is such as may suppress or even destroy competition. Chicago Board of Trade, 246 U.S. at 238, 38 S.Ct. at 243.
This "rule of reason" is the general standard by which an alleged violation of section 1 is to be judged.
There are, however, certain agreements or practices which are so "plainly anticompetitive", Natural Society of Professional Engineers v. United States, 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978); Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 50, 97 S.Ct. 2549, 2557, 58 L.Ed.2d 568 (1977), and so often "lack ... any redeeming virtue," Northern Pacific Railway Co., 356 U.S. at 5, 78 S.Ct. at 518, that they are conclusively presumed to be unlawful, rendering the rule of reason analysis unnecessary. Broadcast Music, Inc. v. Columbia Broadcasting Co., 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979).
This per se rule has been called "the trump card" of antitrust law for when successfully played, the plaintiff "need only tally his score." United States v. Realty Multi-List, Inc., 629 F.2d 1351, 1363 (5th Cir. 1980). To guard against the per se rule's potential to become a sword which destroys competition rather than a shield to preserve it, the per se rule is utilized only in those situations which fall fairly within its rationale.
Among those practices which may be per se violations of the Sherman Act are price fixing[2], resale price maintenance[3], tying arrangements[4], group boycotts[5], and certain *746 types of reciprocal dealing[6]. Even within these categories of restraints, a literal approach to the application of the per se rule is "overly simplistic and often overbroad." Broadcast Music, Inc., 441 U.S. at 9, 99 S.Ct. at 1557. Consequently not every "group boycott" will bear the label of a "per se group boycott."
In determining whether a particular agreement or practice should be afforded per se treatment, the court must examine the business relationship at hand and the alleged attempt to exclude the plaintiff from the market. The first step in this analysis is to determine whether the alleged restraint is "vertical" or "horizontal". See, e. g. Red Diamond Supply, Inc. v. Liquid Carbonic Corp., 637 F.2d 1001, at 1003, 1004 (5th Cir. 1981); Blackburn v. Crum & Foster, 611 F.2d 102, 104 (5th Cir. 1980); Cernuto, Inc. v. United Cabinet Corp., 595 F.2d 164, 168 (3d Cir. 1979).
Vertical restrictions are combinations or agreements between entities at different levels of the market structure, e. g. manufacturers and retailers. Although vertical restraints may reduce intrabrand competition by limiting the number of sellers of a particular product competing for the business of a given group of buyers, certain distribution efficiencies are achieved, thereby promoting interbrand competition. See Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 54, 97 S.Ct. 2549, 2559, 58 L.Ed.2d 568 (1977); Oreck Corp. v. Whirlpool Corp., 579 F.2d 126 (2d Cir.) (en banc), cert. denied, 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). Accordingly, vertical restrictions are analyzed under the rule of reason standard.
Horizontal restraints are agreements between competitors at the same level of the market structure. They have been characterized as "naked restraints of trade with no purpose except stifling of competition," White Motor Co. v. United States, 372 U.S. 253, 263, 83 S.Ct. 696, 702, 9 L.Ed.2d 738 (1963), and are per se violations of the Sherman Act. United States v. Topco Associates, Inc., 405 U.S. 596, 608, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972).
Balogh's maintains that the alleged agreement between Rolex and Mayor's is a horizontal restraint governed by the per se approach, and that the following proposition controls:
where there is a concerted refusal to deal arising out of an arrangement or agreement between competitors of plaintiffs and the sole (distributor) of a unique non-fungible good, thus depriving plaintiffs of the opportunity of competing, injury to the marketplace is presumed and the conduct is deemed illegal per se entitling plaintiffs to recover. (Plaintiff's Mem. at 11)
To support its alleged per se violation of Section 1 of the Sherman Act, Balogh's relies on Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) and American Motor Inns, Inc. v. Holiday Inns, Inc., 521 F.2d 1230 (3d Cir. 1975).
In Klor's, a retailer brought an action against a competing retailer and ten national manufacturers and their distributors alleging that they conspired in a concerted refusal to deal with Klor's. The Court held that the complaint, by alleging a group boycott or concerted refusal to deal, stated a claim under the per se approach. The Court emphasized that
[t]his is not a case of a single trader refusing to deal with another, nor even of a manufacturer and a dealer agreeing to an exclusive distributorship. Alleged in this complaint is a wide combination consisting of manufacturers, distributors and a retailer.... [I]t is not to be tolerated merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy. Id. at 212-13, 79 S.Ct. at 709-10.
Klor's stands for the proposition that a per se violation is stated where a plaintiff alleges "a wide combination consisting of manufacturers, distributors and a retailer." *747 Id. at 213, 79 S.Ct. at 710. Klor's does not hold that a per se violation occurs where a sole distributor agrees with a single retailer not to sell its goods to a competing retailer. Id. at 212, 79 S.Ct. at 709.
Balogh's alleges that Rolex, the sole distributor of a non-fungible good, agreed with a retailer, Mayor's, to sell merchandise to Mayor's and to exclude Balogh's. These allegations are insufficient to state a claim for a per se group boycott or a concerted refusal to deal. Absent are allegations of "a wide combination consisting of manufacturers, distributors and a retailer" Id. at 213, 79 S.Ct. at 710, or of a fabric interwoven by many strands of joint action to eliminate (Balogh's) from participation in the marketplace. United States v. General Motors Corp., 384 U.S. 127, 144, 86 S.Ct. 1321, 1330, 16 L.Ed.2d 415 (1966).
Balogh's reliance on Holiday Inns is likewise misplaced. There, Holiday Inns devised a "radius letter procedure" whereby at least three of its existing franchisees nearest to a proposed franchise location could "comment" on the application. The objections to American Motor Inns' proposed franchise were treated "as a veto" by Holiday Inns and the proposed franchise was rejected. The court held that this constituted a horizontal allocation of the market American Motor Inns sought to enter, and the conduct was accordingly a per se violation of section 1 of the Sherman Act. 521 F.2d 1230, 1242. See United States v. Topco Associates, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972).
Holiday Inns recognizes that a per se violation exists when the source of the conspiracy between a manufacturer and its distributors is a combination of the distributors. H & B Equipment Co., Inc. v. International Harvester, 577 F.2d 239, 245 (5th Cir. 1978). Although Count I of the Complaint alleges that Rolex "opened" new distribution outlets in the market, these outlets were not part of the agreement between Rolex and Mayor's. The source of the instant conspiracy is not a combination of distributors but rather an agreement between a single distributor and a single retailer. The agreement is neither "plainly anticompetitive", National Society of Engineers, 435 U.S. at 692, 98 S.Ct. at 1365, nor "lacking ... any redeeming virtue." Northern Pacific Railway Co., 356 U.S. at 5, 78 S.Ct. at 518.
The court finds that the alleged agreement is within the category of vertical restraints governed by the rule of reason and that Baloghs' attempt to state a per se violation of § 1 of the Sherman Act should be rejected. Oreck Corp. v. Whirlpool Corp., 579 F.2d 126.[7]
Since Baloghs' attempt to state a claim under the per se approach must be rejected, the question remains whether Count I, in its present form, states a claim under the "rule of reason" as against all defendants.
Mayor's contends that the complaint fails to allege the elements of a "rule of reason" case and accordingly, the complaint should be dismissed. In support, Mayor's relies on decisions which permit dismissals in antitrust cases where facts supporting a bare bones statement of injury are absent. E. g., Heart Disease Research Foundation v. General Motors Corp., 463 F.2d 98, 100 (2d Cir. 1972).
*748 The Fifth Circuit has held that in a private action for a violation of Section 1 of the Sherman Act, proof of individual injury is insufficient in "rule of reason" cases. Kestenbaum v. Falstaff Brewing Corp., 514 F.2d 690, 699-700 (5th Cir. 1975), cert. denied, 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976). But see Syracuse Broadcasting Corp. v. Newhouse, 295 F.2d 269, 276-77 (2d Cir. 1961). Thus, the private plaintiff must allege, at a minimum, that the defendant's activity "tends or is reasonably calculated to prejudice the public interest." Rogers v. Douglas Tobacco Bd. of Trade, Inc., 266 F.2d 636, 644 (5th Cir.), cert. denied, 361 U.S. 833, 80 S.Ct. 85, 4 L.Ed.2d 75 (1959) (emphasis in original). See Schaffer v. Universal Rundle Corp., 397 F.2d 893, 897 (5th Cir. 1968); Cherokee Laboratories, Inc. v. Rotary Drilling Services, Inc., 383 F.2d 97, 104 (5th Cir. 1967), cert. denied, 390 U.S. 904, 88 S.Ct. 816, 19 L.Ed.2d 870 (1968). See also 2A Moore's Federal Practice ¶ 8.17[3] at 170.
In its complaint, Balogh's alleges, inter alia, that as a result of the defendants' alleged restraint of trade, they have lost sales and are suffering irreparable harm. Complaint ¶¶ 21, 22. It fails to allege any particular injury or prejudice to the public.
Accordingly, Count I of the complaint will be dismissed with leave to file an amended complaint containing allegations of prejudice or injury to the public.
Count II of the complaint alleges that Rolex and Mayor's have violated the provisions of the Clayton Act, 15 U.S.C. §§ 12-27. Balogh's has not presented any argument in opposition to the Motions to Dismiss this count, and it is evident that Count II must likewise be dismissed.
Counts III and IV are pendent state law claims. The federal claims having been dismissed, the pendent state law claims will also be dismissed. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).
It is accordingly ORDERED AND ADJUDGED as follows:
1) That Montres Rolex' Motion for Summary Judgment be and the same is hereby GRANTED, and Montres Rolex, S.A. will be dismissed as a Defendant to this action.
2) That Rolex Watch U.S.A.'s Motion to Dismiss be and the same is hereby GRANTED.
3) That Mayors' Motion to Dismiss be and the same is hereby GRANTED.
4) That Balogh's will be allowed twenty (20) days from the date hereof within which to file an Amended Complaint containing particular allegations of injury or prejudice to the public.
5) That insofar as Mayor's has moved for a More Definite Statement, that Motion will be and the same is hereby DENIED AS MOOT.
NOTES
[1] The Complaint listed ten Mayors' outlets and alleged that each operated one or more retail jewelry stores in Dade and Broward counties. Prior to the filing of the Complaint, however, the subsidiaries were merged into the parent. These outlets and their President will be referred to collectively as "Mayor's".
[2] United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).
[3] Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911).
[4] International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947).
[5] Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).
[6] United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948).
[7] Oreck alleged, inter alia, that at the insistence of its competitor, Oreck's distributorship of vacuum cleaners manufactured by Whirlpool Corporation was terminated. Oreck argued that the termination of its exclusive distributorship was a "group boycott" under Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) and that a per se violation of § 1 of the Sherman Act was stated. The court rejected this position and held that this was a vertical restriction governed by the rule of reason.

The present case, involving as it does an alleged agreement between a single manufacturer and a single dealer, is, in essence, an exclusive distributorship controversy, and the "group boycott" doctrine, is, therefore, not applicable.
. . . . .
In this case, therefore, something more than an agreement between Whirlpool and Sears to eliminate Oreck must be shown. The agreement becomes violative of § 1 of the Sherman Act only if it is anticompetitive in purpose or effectin sum, it must be tested by the rule of reason. 579 F.2d at 131, 133 (emphasis retained).